39 N.J. Super. 243 (1956)
120 A.2d 779
JOHN P. COX AND ELIZABETH M. COX, HIS WIFE, AND EVERETT H. THORNE, PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF WALL, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND WILLIAM STROHM, INSPECTOR OF BUILDINGS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1956.
Decided February 20, 1956.
*245 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. William R. Blair, Jr., argued the cause for plaintiffs-respondents (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
Mr. William C. Nowels argued the cause for defendants-appellants.
The opinion of the court was delivered by CLAPP, S.J.A.D.
The Superior Court, Law Division, declared the building code of the defendant Wall Township to be invalid insofar as it prohibited materials and methods of construction proposed to be used in a certain prefabricated house herein referred to. The court also ordered the defendant building inspector of the township to issue a building permit for the erection of the house.
Defendants appeal, claiming, first, that the provisions of the building code under attack here are not arbitrary and hence should not have been invalidated; second, that certain exhibits were improperly admitted into evidence; and third, that plaintiffs have not the standing to maintain this action.
The prefabricated house proposed to be erected here is a so-called Gunnison Home, modified in certain respects, a type of house manufactured by a subsidiary of the United States Steel Corporation. The walls, ceilings and roof of the home consist of an assemblage of prefabricated plywood panels, each panel being glued together integrally to form what is designated as a stressed-skin unit. Instead of the usual rafter roof, trussing is employed between the roof and the ceiling. We will not encumber this opinion with the particular objections raised by the defendants, nor with the proofs put in by the plaintiffs to meet them. Suffice it to say *246 generally that the trial court found, referring to these houses:
"The modes of construction and types of materals used in the aforesaid dwelling houses are permitted under the `Standard Building Code of New Jersey' prepared pursuant to Laws of 1946, Chapter 120 [N.J.S.A. 52:27C-54 et seq.], and promulgated by the Department of Conservation and Economic Development of the State of New Jersey and are permitted under the `New Jersey Code of Minimum Construction Requirements for One and Two Family Dwellings' 1953 revised reprint, promulgated by the Department of Conservation and Economic Development of the State of New Jersey. Said modes of construction and types of materials have received the approval of the Federal Housing Authority and meet the `Commercial Standard CS125-47' a recorded voluntary standard of the trade, promulgated by the United States Department of Commerce.
Tests of said modes of construction and types of materials conducted by the Institute of Industrial Research affiliated with the University of Louisville, Kentucky, have established that said types of construction comply with the maximum requirements established by building codes throughout the United States with a safety factor of two to two and one-half times said maximum requirements."
The evidence supporting the paragraph last quoted is rather general and a little vague. However defendants do not challenge these findings.
N.J.S.A. 40:48-1, par. 13, authorizes the adoption of a building code. But there must be a reasonable relation between the regulations provided for therein and the safety, health or other public interest designed to be served; otherwise there is an unwarranted intrusion on the fundamental prerogative of an owner of owner property to do with his own as he wishes. Delawanna Iron & Metal Co. v. Albrecht, 9 N.J. 424, 429 (1952). The regulations are presumed to be reasonable in that regard, Mt. Zion Baptist Church of Lodi Tp., Bergen County, v. Melillo, 3 N.J. 61, 65 (1949); and any person attacking them will not prevail unless he clearly establishes that they are not so. State v. Mundet Cork Corp., 8 N.J. 359, 370 (1952).
The proofs here revolved chiefly about the factor of safety  that is, the strength of the materials and of the modes of construction employed in the Gunnison Home. We agree with the trial court that it was demonstrated at the trial with *247 clarity that the materials and modes so employed, though they do not comply with the building code of Wall Township, are nevertheless as adequate as those permitted thereby.
Defendants say, assuming all that to be so, still the courts should not invalidate building regulations governing certain structural devices merely because other devices are equally safe. But the law does not resolve the matter in that fashion. It may declare (as was declared by the trial court here) that the regulations will stand, except to the extent that they prohibit the latter devices; to that extent, they are invalidated.
For a case holding building regulations invalid where they proscribed certain materials which were as adequate as those permitted, see McCray v. City of Chicago, 292 Ill. 60, 126 N.E. 557 ASup. Ct. 1920); Cf. People ex rel. Brewer v. Kelly, 295 Ill. App. 156, 14 N.E.2d 694 (1938); State ex rel. Snyder v. Yoter, 65 Ohio App. 492, 30 N.E.2d 558 (1939), dealing with (we are told by plaintiffs) a Gunnison Home. But cf. Levitt & Sons, Inc., v. Young, 189 Misc. 922, 74 N.Y.S.2d 120 (Sup. Ct. 1947), where the court refused to direct the issuance of a building permit which would allow 5/16-inch plywood to be used in place of conventional sheathing (it will be observed that the code here permitted substitution of materials); City of Odessa v. Halbrook, 103 S.W.2d 223 (Tex. Civ. App. 1937).
Defendants contend that with only a few minor changes effected at no great cost, the Gunnison Home could be made to conform to the building code. But the defendants do not furnish us with any detail on the point; and the modes of construction employed in that home are so much at variance with those contemplated by the Code that there seems to be little or no basis for the contention.
Defendants contend further that any code which does not allow for new materials as they come upon the market, will face the difficulties presented here. Besides, they say, under any such code a small municipality, which now engages a local carpenter as a building inspector, would be required to maintain a corps of experts to test such materials. This *248 would be a matter of some seriousness, were this the sole means of approving new materials. However we are not persuaded that such would be the case. In that regard reference might be made, in passing, to provisions such as those found in the model code for one- and two-family dwellings, which was prepared by the New Jersey State Department of Conservation and Economic Development, Division of Planning and Development, in 1946. In the foreword to that code, it is said:
"It is intended as a building code which can be understood by the layman * * *. In order to keep the text of the code as simple as possible, it was deemed desirable to refer to the findings of various research groups who have established experience and data and are generally recognized as a source of authority. * * *

* * * * * * * *
* * * the committee kept in mind the fact that new materials would come into the market from time to time, and endeavored to arrange the code in such manner that, where these materials have been approved for safe and sound construction, they might be used in the construction of one and two family houses in the State."
For example, sections 307 and 601 of this code provide:
"307. Whenever there is evidence that any material or any construction does not conform to the requirements of this code, the building inspector may require tests as proof of compliance to be made at the expense of the owner or his agent by a testing laboratory or other organization approved by the building inspector. * * *
601. All building materials shall be of quality conforming to generally accepted standards. Except as may be otherwise provided in law, or in this code, the findings recommended by the American Society for Testing Materials shall be deemed to be acceptable."
It hardly needs to be said that we do not pass upon this provision, nor upon the adequacy of Gunnison Homes in rem. Our decision here concerns only the parties and their privies and the particular type of Gunnison Home for the erection of which a permit is sought here. So much for defendants' first point.
Their second point is that the trial court erred in admitting into evidence the following four exhibits:
Commercial Standard CS125-47 for Prefabricated Homes (Second Edition), a publication of the United States Department of Commerce.
*249 Structural Engineering Bulletin No. SE-138 for Gunnison Homes Manufactured by United States Steel Homes, Inc., a publication of the Federal Housing Administration.
Plywood as a Structural Covering for Frame Walls and Wall Units No. R 1025, a publication of the United States Department of Agriculture.
A research report of the University of Louisville Institute of Industrial Research of tests performed by and under the direct supervision of plaintiffs' expert witness, John Edward Heer, Jr.
The first three exhibits are admissible into evidence as official records, evidenced by a document purporting to be an official publication. See R.R. 4:45-1(a); United States v. Aluminum Co. of America, 1 F.R.D. 71 (D.C.S.D.N.Y. 1939); 5 Moore, Federal Practice (2d ed. 1951), § 44.03. Assuming error in the admission of the fourth document, it nevertheless cannot be said that defendants have thereby suffered a substantial injustice. R.R. 1:5-3(b).
Defendants' third and final point is that plaintiffs do not have the standing to maintain the action. The plaintiffs, John P. Cox and Elizabeth M. Cox, his wife, had contracted to purchase the lots on which the Gunnison Home was to be erected. Such a contractual interest in the property gave them a sufficient standing not only to apply for a building permit, but also to enforce their right to the permit by an action such as this. Brown v. Terhune, 125 N.J.L. 618 (Sup. Ct. 1941), appeal dismissed 127 N.J.L. 554 (E. & A. 1942); Jersey Triangle Corp. v. Board of Adjustment, 127 N.J.L. 194, 195 (Sup. Ct. 1941); Sigretto v. Board of Adjustment, 134 N.J.L. 587 (Sup. Ct. 1946); cf. Reimer v. Dallas (not officially reported), 129 A. 390, 392 (N.J. Sup. Ct. 1925); Slamowitz v. Jelleme, 3 N.J. Misc. 1169 (Sup. Ct. 1925); Wilson v. Township Committee of Union Township, 123 N.J.L. 474 (Sup. Ct. 1939); Finn v. Municipal Council of City of Clifton, 136 N.J.L. 34 (E. & A. 1947); Protomastro v. Board of Adjustment, 3 N.J. Super. 539, 545 (Law Div. 1949), reversed on other grounds 3 N.J. 494 (1950). Contra, Malone v. Mayor and Aldermen of Jersey City, 7 N.J. Misc. 955 (Sup. Ct. 1929); but see Adams v. Mayor and Aldermen of Jersey City, 107 N.J.L. 149, 150 (E. & A. 1930). Cf. Krieger v. Scott, 4 N.J. Misc. 942 *250 (Sup. Ct. 1926), where the relators did not have (so far as appears) even a contractual interest in the property.
After the present action was started, Cox and his wife assigned to the plaintiff Everett H. Thorne, their contract for the purchase of the lots. Thorne then took title to the lots and also secured an option on adjoining property in order to comply with an amendment of the zoning ordinance, adopted since the commencement of this action, requiring the minimum size of a building lot to be larger than formerly. Now Thorne desires to have the building permit issued to himself; but it appears that when the house is built, he, pursuant to oral understanding, is to transfer the house and lots to Cox. The order of the court below satisfactorily resolves the matter by directing that the permit issue to Thorne, upon certain conditions, including the filing by him of an application therefor. R.R. 4:38-3.
The judgment below is modified so as to require the issuance of the permit only if the plans submitted by Thorne show bridging of 1 1/4" by 3", and are sealed or attested to as required by law, all as agreed to at the trial below; in all other respects it will be affirmed. Costs to plaintiffs.