**KINGSBERRY HOMES CORPORATION,**
Plaintiff,

v.

**GWINNETT COUNTY, GEORGIA,** and
**W. Ray Morgan, W. R. Pruitt** and **O.
Felton Thompson,** as Commissioners of
Roads and Revenues of Gwinnett County, Georgia, Defendants.

Civ. A. No. 9763.

United States District Court
N. D. Georgia,
Gainesville Division.

Dec. 27, 1965.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., Cheeley & Merritt, Buford, Ga., for plaintiff.

Stark & Stark, Lawrenceville, Ga., for defendants.

SIDNEY O. SMITH, Jr., District Judge.

This is a suit in which plaintiff, a prefabricated home builder, seeks a preliminary and permanent injunction against the defendants, as County Commissioners of Gwinnett County, Georgia, from enforcement of certain provisions of that county's building code. The plaintiff contends that such provisions are

violative of the "due process" and "equal protection" clauses of the Fourteenth Amendment of the Constitution of the United States as well as the "property rights" clauses of Article I, § I, Paragraph II, of the Constitution of Georgia. The defendants contend that the provisions attacked are a valid exercise of the police powers of a political subdivision of the state of Georgia.

The issue of preliminary injunction was heard by the court on affidavit, oral stipulation and argument, as well as written brief.

FINDINGS OF FACT.

On or about November 1, 1956, defendants through their predecessors in office (hereinafter referred to as Gwinnett County) adopted a building code for the unincorporated areas of the county. In general, the code was formulated and adjusted to the older and conventional methods of house construction where the bulk of fabrication is done on the job by skilled carpenters and other craftsmen.

The plaintiff or its predecessors (hereinafter referred to as Kingsberry) began business in 1945 and since that time has manufactured over 35,000 prefabricated houses in use over the whole United States. During the same period approximately 1,800,000 manufactured homes have been erected over the United States. In the past 10 years, the share of the single-family residence market obtained by manufactured homes has increased from 5.9% to 20.29%. Thus, manufactured homes of the type produced by Kingsberry have achieved wide national acceptance.

In Georgia, Kingsberry has been selling manufactured houses for 20 years and in Gwinnett County for 10 years. In the state as a whole, Kingsberry's sales have increased from 420 homes in 1955 to 730 homes for the last available twelve-month period. In Gwinnett County, it had sold over 200 such houses prior to July 1, 1965.

The Code was not enforced against manufactured homes by Gwinnett County from its passage on November 1, 1956, until on or about June 15, 1965, and building permits were continually granted Kingsberry's customers, including the 200 plus homes already located within the county.

The construction standards employed by plaintiff equal or exceed the minimum construction standards of the Federal Housing Administration, the Veterans Administration, and the Southern Standard Building Code.

The Gwinnett County Code also requires standards that equal or exceed these same tests and, in the case of commercial buildings, the Southern Standard Building Code is adopted by reference as the Gwinnett County Code.

To change its manufacturing procedure to comply with the Gwinnett County Code is impractical for Kingsberry because of the small percentage of its assembly line production ending up in Gwinnett County. To modify its house on the site is expensive and would basically defeat the purpose and savings of manufactured homes.

Since June 15, 1965, Gwinnett County has been enforcing the building code against Kingsberry and building permits cannot be obtained for its houses as presently constructed. As a result, Kingsberry has actually lost sales and potential customers have ceased considering its product. One customer of some 20 houses in the past has switched to conventional construction for the remainder of a proposed 175 home subdivision, and Kingsberry has suffered and will suffer irreparable financial damage if the present code is enforced.

The portions of Gwinnett County's Code contended to be unconstitutional are those which prohibit erection of Kingsberry homes because of differences in joist and rafter systems, sheathing, size of floor joists, interior wall construction, and top plates. The principal area of disagreement apparently stems from the fact that interior walls in the Kingsberry Homes are non-load bearing and in

certain instances, smaller components are used in joist construction, sometimes with compensating spacing or a higher grade of lumber.[1]

1. The provisions of the Code attacked and the existing Kingsberry standards are illustrated by the following chart.

GWINNETT COUNTY CODE

(a) SECTION 5. FRAMING.
The distance between supports under wood girders shall not exceed the following: For four by eight (4×8) and four by ten (4×10) girders the distance between supports shall not exceed eight (8) feet for one story houses and seven (7) feet for two story houses.

(b) SECTION 5. FRAMING.
No floor joist shall be less than two by eight (2×8) and * * * shall rest on a two by four (2×4) bond timber securely spiked to the sill or girder * * *. All floor joists must be placed not more than sixteen (16) inches on center * * *. A two by eight (2×8) floor joist shall not span more than fourteen (14) feet.

(c) SECTION 6. CEILING JOISTS AND ROOF RAFTERS.
The allowable spans for ceiling joists shall be as follows:
Two by four (2×4) spaced sixteen inches apart; ten feet on small rooms and porch.
Two by six (2×6) spaced sixteen inches apart; fifteen feet.
Two by eight (2×8) spaced sixteen inches apart; twenty feet.
The allowable span for roof rafters shall be as follows:
Two by four (2×4) spaced twenty inches apart; six feet.
Two by six (2×6) spaced twenty inches apart; thirteen feet.
Two by eight (2×8) spaced twenty inches apart; eighteen feet.

(d) SECTION 7. EXTERIOR WALLS. All opening shall have the studs doubled to form the jambs; and the inner stud shall be cut so as to support the header over the opening. (Apparently applies to interior walls also.)

(e) SECTION 7. EXTERIOR WALLS. All corners must be braced unless storm sheathing is placed diagonally on all sides of house, and run in opposite direction from corners.

(f) SECTION 7. EXTERIOR WALLS. Top plates shall be not less than doubled 2×4's which shall lap at all corner and intersecting partitions. (Apparently applies to interior walls also.)

KINGSBERRY

(a) Does not comply with distance, but girders are three 2×10's, or equivalent of 6×10 with distances determined by National Design specifications of National Lumber Manufacturers Association.

(b) Floor joists are 2×6 No. 1 Southern Yellow Pine and rest on 2×2 ledges securely spiked to sill or girder, but 2×6 joists are spanned only 7' 9½" instead of 14 feet.

(c) * * *, roof trusses made of two by four (2×4) No. 1 and No. 2 Southern Yellow Pine are spaced twenty-four (24) inches on center up to a span of twenty-six (26) feet; and roof trusses made of two by four (2×4) and two by six (2×6) No. 1 and No. 2 Southern Yellow Pine are spaced twenty-four (24) inches on center up to a span of thirty-two (32) feet;

(d) For interior partitions, which are non load-bearing, single framed openings with single studs are placed on each side of the opening and one two by four (2×4) header is placed flat between the jamb studs;

(e) High density fibre board sheathing is applied to exterior walls without corner bracing.

(f) With respect to top plates, for interior partitions top plates are single two by four's (2×4's).

## FINDINGS OF LAW.

From the well-considered briefs filed by both parties, it is apparent that the ultimate validity of the provisions in the Gwinnett County building code will be determined by their "reasonableness" to the subject-matter. Mestre, et al. v. City of Atlanta, 255 F.2d 401 (5th Cir., 1958). The present provisions, at least to a non-expert, are not unreasonable per se and the fact determination could well involve extensive technical data and testimony with the ultimate tests to be (1) whether the public generally, as distinguished from those of a particular class, require such provisions and (2) whether the provisions are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. Lawton, et al. v. Steele, 152 U.S. 133, 137, 14 S.Ct. 499, 501, 38 L.Ed. 385. Under such a situation, the court must decide the propriety of preliminary injunctive relief.

 "The applicant for a preliminary injunction has the burden of showing a right to injunctive relief and * * that irreparable injury will result if the injunction is not granted." Moore's Federal Practice, Injunction § 65.04, page 1629–30. 43 C.J.S. Injunctions § 119 page 650. As seen, the latter element is present here and the primary problem is whether the plaintiff has carried the burden of showing its right to injunctive relief. To justify a temporary injunction, it is not necessary that the plaintiff's right to a final decision be absolutely certain. Hamilton Watch Co. v. Benrus, 206 F.2d 738, 740 (2d Cir., 1953). To hold otherwise would convert a temporary hearing into a final trial. "Where a strong showing of the invalidity of a statute or ordinance is made a temporary injunction may be issued to restrain enforcement thereof pending trial, particularly where it is clear that greater injury would be done by refusing such injunction than by granting it." 43 C.J.S. Injunctions § 119, page 657;

Moultrie Milk Shed, Inc. v. City of Cairo, 206 Ga. 348, 57 S.E.2d 199.

It is conceivable that the standards of the Gwinnett County Code may result in a "stronger" house than the Kingsberry, but such a showing would not necessarily be proof of reasonableness. The Code requirements might result in a house which would support ten feet of snow or 40 men on its roof, but such achievements would not be necessary to the public safety and welfare considering the habits of house-dwellers in mild climes. "Building regulations may be invalid to the extent that they prohibit structural devices, materials, or methods of construction which are as adequate as those permitted." 13 Am.Jur.2d, Buildings 13, page 279. See Cox, et al. v. Township of Wall, 39 N.J.Super. 243, 120 A.2d 779 (Gunnison manufactured home); McCrary v. City of Chicago, 292 Ill. 60, 126 N.E. 557 (Best wall v. plaster); People ex rel. Brewer v. Kelley, 295 Ill.App. 156, 14 N.E.2d 694 (Casement windows v. sash windows). These cases demonstrate that the courts have been continually presented with technological advancements in the building industry.

 In the case of disputed building ordinances, it is concluded that relief should be granted where the complaining parties show:

(1) A prima facie case of unreasonableness of the provisions attacked.

(2) Immediate irreparable injury.

(3) That the public interest will not be seriously affected by the granting of an injunction.

 In the instant case, plaintiff has met these requirements. First, the court holds that proof by plaintiff of compliance with recognized building standards such as Federal Housing Administration, Veterans Administration, and the Southern Building Code shows prima facie that the particular provisions are

unreasonable. At the least, it is a showing of "adequacy" on the part of Kingsberry's product. Second, the plaintiff's damage is immediate and irreparable from lost sales. Thirdly, the public interest cannot seriously be affected. While the latter question is fraught with many intangibles and extremities on preliminary hearing (See Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601, 602), there is no showing of harm by the nonenforcement of the Code against plaintiff for 10 years after its adoption. Likewise, defendants in their representative capacity cannot be harmed by issuing building permits as they have over that period.

> "Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to the opposing party, even if the final decree be in his favor, will be inconsiderable * * * the injunction usually will be granted." Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972.

On balancing of damage, convenience, and the public interest, the equities appear to be with the plaintiff. Accordingly, defendants will be enjoined from enforcing those provisions of Section 5, Section 6, and Section 7 of the Gwinnett County Code set out in the complaint and alluded to in this opinion and any criminal penalties for failure to comply as against plaintiff; and that building permits be issued for plaintiff's manufactured homes that otherwise meet the building code. Likewise, the plaintiff will be enjoined from erecting or selling for erection any home in Gwinnett County which is constructed any differently from those offered on July 1, 1965. The defendants not being subject to pecuniary damage, no bond is required. Let a specific injunction under Rule 65, F.R. Civ.P. be presented.

It is so ordered.