**BOISE CASCADE CORPORATION d/b/a Kingsberry Homes, Plaintiff,**

v.

**GWINNETT COUNTY, GEORGIA, and W. Ray Morgan, W. R. Pruitt, and O. Felton Thompson, as Commissioners of Roads and Revenues of Gwinnett County, Georgia, Defendants.**

Civ. A. No. 9763.

United States District Court
N. D. Georgia, Atlanta Division.

Aug. 14, 1967.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., Cheeley & Merritt, Buford, Ga., for plaintiff.

Stark & Stark, Lawrenceville, Ga., for defendants.

SIDNEY O. SMITH, Jr., District Judge.

This is the final trial of a petition by the plaintiff prefabricated-home builder against defendant seeking to enjoin enforcement of a county building code. The case was extensively argued and tried on the preliminary injunction. See 248 F.Supp. 765 (D.C.1966). Since the decision in that case, the defendant county has completely revamped its building code and, in effect, has adopted the "Southern Standard Building Code" with three minor amendments. As was indicated earlier there is no dispute over the Southern Standard Building Code itself. Both parties and the court consider it a reasonable exercise of the police power. However, a dispute remains as to two amendments which provide:

(1) "Where any ceiling joist shall be spaced more than 16 inches on center and a plywood decking is used, said decking must be at least ½ inch in thickness."

(2) "All residential dwellings must be braced at the corner with a minimum of a ½ inch plywood corner brace, or a ⅓ corner brace, or a ¾ corner brace."[1]

The case came on for trial before the court on the issue as to whether such exercise of the police power met the standard of "reasonableness" required and specifically (a) whether the public generally, as distinguished from those of a particular class, require such provisions and (b) whether the provisions are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals.[2] Lawton v. Steele, 152 U.S. 133, 137, 14 S.Ct. 499, 38 L.Ed. 385 (1894). Mestre v. City of Atlanta, 255 F.2d 401 (5th Cir. 1958). On such trial the court makes the following findings:

(1) *Roof Decking.*

Contrary to the building code, plaintiff uses in its prefabricated home plywood roof-decking of ⅜″ thickness, grade-marked 24/0. Such construction is permitted by the Southern Standard Code as well as VA, FHA, and other recognized national standards. The inquiry into the propriety of plaintiff's construction was complicated but at the same time answered by an industry wide change in the plywood standards which occurred on December 1, 1966. While it is not revealed by the evidence, the court is convinced that such changes were unknown to the county at the time of adoption of its present requirement.

In the constant and continuing progress in research and development in wood materials, manufacturing techniques and standards have changed radically in the last ten years. Originally such changes are initiated by processors, then adopted by the industry trade association (American Plywood Association), and eventually accepted by various standard building codes. The Plywood Association, besides being a promotional and research group, maintains strict quality controls over its members. Compliance is a prime prerequisite to use of trade and grade-marks widely accepted by the public.

Originally, classification of plywood for building purposes related to thickness and species, i. e., Douglas Fir, Southern Pine, spruce, hemlock, etc. As technological advances produced the use of more and more species as well as more and

---

1. See P. Ex. #1.

2. See Attachment C, "Statement of Issues" to pre-trial order of February 10, 1967.

more lamination improvements, the number of standards in existence became cumbersome, as they related to three different use or strength standards and some thirty different species, allocated to various groups. The result was that the public had to perform complicated research to ascertain the building utility of a particular piece of plywood grade marked only as to listed species.

To solve this dilemma, one consolidated standard was adopted to supplant the many pre-existing classifications.[3] In essence, the new standard substitutes a strength test for a species and size test. Thus all plywoods, regardless of species, size, or thickness, are graded by new symbols,[4] indicating strength and rigidity for building purposes. Plywood sheathing panels are now marked 12/0 up to 48/24 indicating comparative strengths, regardless of thickness.

■■ It is abundantly shown both by the standards and codes and by direct evidence of specific deflexion tests conducted by reputable engineering testing companies that the ⅜″ 24/0 plywood used by the plaintiff is the equivalent of the ½″ plywood required by the code under the old system. Thus, except for certain structural groupings not at issue here, the two requirements are identical and have the same rigidity and strength. Accordingly, there is no hesitancy in concluding that the specific requirement of ½″ plywood decking is unreasonable and therefore unenforceable, and that the 24/0 requirements of the Southern Standard Building Code is acceptable in all respects for the area in question.

(2) *Corner Bracing.*

The situation as to corner bracing is somewhat more complex. As seen, the present code contemplates either ½″ plywood wall sheathing at corners *or* a system of corner bracing with 2 x 4's or 1 x 3's used in traditional housing construction.[5] Thus, under the code, the builder has an option not available in roof decking. The plaintiff, however, uses yet a third alternative through the application of ½″ intermediate density fibreboard sheathing.

As in the case of plywood, considerable technological advancement has occurred in the fibreboard field with the result that it now competes with plywood in many construction uses. Its use, as bracing for exterior walls at a minimum of ⁷⁄₁₆″ thickness, is authorized by the Southern Standard Building Code.[6]

■ Extensive specific tests of the comparative qualities of fibreboard and both the ⅓ and ¾ traditional corner bracing were made for this trial. The purpose of all types of corner-bracing is to maintain the structure of the entire house to keep it from collapsing, so again the characteristics of rigidity is the concern. Generally, *rigidity is the stiffness* of the material used as well as the quantity or size used. Without detailing the minutiae of the tests,[7] panels of fibreboard bracing and panels of traditional bracing were subjected to various racking loads to determine relative strength and resistance to twisting. These direct comparison tests, conducted under recognized ASTM methods, conclusively proved that the fibreboard construction employed by plaintiff is more rigid and stronger and can bear more racking load than traditional corner braced panels. Evidence of other general tests on fibreboard panels support this view.[8] Under such circumstances, there is no hesitancy in concluding that plaintiff's fibreboard is at least equal to that alternate permitted by the Code.

■ The evidence also reveals that the ½″ plywood corner sheathing is stronger

---

3. See P. Ex. "A", Tables 1705.6A and 1705.6B.

4. See P. Ex. "B" for typical marks. The A, B, C, D or A/C, C/C marks apply to quality and appearance, not to strength.

5. See P. Ex. 1–A, diagram of diagonal bracing.

6. See Pl. Ex. "2". Section 1706.2.

7. See P. Ex. # 7–3 ff. plus various photographs and testimony depicting the tests.

8. See P. Ex. #3, 4, and 5.

than the ½″ fibreboard corner sheathing used by plaintiff. Thus, of the three methods, the code-approved plywood is best, the code-approved diagonal bracing is weakest and the fibreboard in between is relative strength. As a result, the court concludes that the present code requirements are unreasonable and therefore unenforceable and that the fibreboard requirements of the Southern Standard Building Code are acceptable in all respects for the area in question.

While the county is justified in adopting a building code and specifically in adopting a code specifically covering roof-decking and corner-bracing, the court finds under the evidence that the two provisions adopted in this respect are unreasonable to accomplish this protection of the general public and, therefore, "not reasonably necessary" for such purpose.[9]

Evidence offered by the defendant to the effect that some of plaintiff's homes are being poorly constructed is rejected as irrelevant. Such matters address themselves to compliance with a code rather than the legality of its provisions.

Accordingly, relief will be granted to prevent enforcement of the two amendments attacked, as the plaintiff is otherwise entitled to injunctive relief on the

---

**9.** As seen, the court has concluded that proof of equivalence satisfies the burden of proof in showing unreasonableness in this type case. Factual equivalence easily satisfies the problem presented by (1) herein; it less completely satisfies (2) inasmuch as the evidence produced showed equivalence with only one alternative. On such basis, the present code provision is unreasonable. Under such circumstances, an intriguing problem is not before the court; namely whether a single building requirement that is "better" than normal can be enforced as a proper exercise of the police power in this area. The limited decisions are not clear in this regard. For example, assume the present code *only* permitted ½″ plywood corner sheathing, which is obviously superior to ½″ fibreboard sheathing as used by the plaintiff. In such an instance, the test of equivalence would fail and the factual inquiry would be more complex. There is reason to believe that the determination then to be made by the court would turn on "adequacy" rather than "equivalence" and the evidence might conceivably point toward the need for certain results in a given area, rather than a comparison between two specific methods. See the cases cited in the original opinion at 248 F.Supp. 768 (1–3). Thus, the inquiry would relate to the *need* for the higher standard as opposed to the *adequacy* of the proposed method. It would not necessarily follow that the proposed method would have to be "as adequate" as the existing requirement as that phrase is frequently used by the courts. It may not be "as adequate" but still sufficiently adequate for the need in the area, which might vary between Florida and Minnesota or Maine and California.

In such an instance, the court would be strongly influenced by established building codes promulgated by the government and by broad industry-based groups, such as the Southern Standard Building Code. They appear to be reasonably current, relatively free of influence by special groups, and honestly administered by professors, researchers, government agencies, and other professional people interested in the problem. Certainly they provide a vast reservoir of technical expertise, not normally possessed by judges or jurors, particularly when explained by an articulate expert witness such as appeared in this trial.

The indications are that compliance with such a standard would establish a prima facie case of "equivalence", if that were the issue, of "adequacy" if that were the issue. Such a showing should not normally yield to anything but strong proof of a peculiar extraordinary hazard in the particular area, necessitating the higher standard in question.

In the war to eliminate sub-standard housing, building codes are democracy's best weapon. However, the economic cost is best met by intensive competition in the market-place. Generally, it should move unfettered under acceptable general standards and not under specific standards varying from city to city, county to county, or state to state. The migratory population of the country could then be secure in its reliance on a known minimum wherever it moves. Model codes are the best answer yet. Upon widespread adoption and compliance, the erection of superior buildings can be left to owners, architects, engineers, and the developers of specific areas with restrictive covenants covering construction.

facts proved at the first hearing. See 248 F.Supp. 768. It would appear to the court that this action leaves the Southern Standard Building Code, 1965, as successively amended, in effect in Gwinnett County, but certainly it does not prohibit the adoption of the specific provisions of that Code or any other reasonable building requirement in accordance with this decision.

A specific permanent injunction under Rule 65, Federal Rules of Civil Procedure may be presented.

It is so ordered.