Water Pollution Commission,
No. 4876.

PLYMOUTH VILLAGE FIRE DISTRICT

*v.*

NEW HAMPSHIRE WATER POLLUTION COMMISSION.

Argued January 3, 1961.

Decided February 7, 1961.

*William F. Batchelder* and *Nighswander, Lord & Bownes* (*Mr. Batchelder* orally), for the plaintiff.

*Louis C. Wyman*, Attorney General, and *William J. O'Neil* (*Mr. O'Neil* orally), for the defendant.

BLANDIN, J. The issue before us is the validity of the decision of the defendant Water Pollution Commission dated July 13, 1960, denying a further extension of time to the plaintiff Plymouth Village Fire District in which to comply with the order of the Commission of January 30, 1956. The order was that the district take the necessary steps within two years of receiving notice of the order "to abate the pollution caused by the discharge of raw sewage, inadequately treated sewage, industrial waste or other waste as it is being discharged from the Town's sewerage system" into the Class B-1 waters of the Baker River some two thousand feet upstream from the point below which the waters cease to be classified as B-1 and become classified as D. See Laws 1955, *c*. 233, *s*. 1 (I); Laws 1959, *c*. 243, *s*. 1 (IX). Both parties agree that our decision must be governed by RSA 541:13, which reads as follows: "Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, and all findings of the commission upon all questions of fact properly before it shall be deemed to be *prima facie* lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

The Commission, pursuant to a request by the district, has granted four extensions of time within which to comply with Order No. 553, previous to this appeal. These extensions were granted on October 9, 1957, April 9, 1958, October 8, 1958, and March 11, 1959. The district's request for an indefinite extension, made on October 5, 1959, was denied by the Commission, after consideration and

conferences, on December 9, 1959. Thereafter, on February 15, 1960, the district wrote the Commission suggesting that it put in its 1960 district meeting warrant an article to see if the district would vote to file an application with the Federal Government to obtain $15,000 toward "defraying the cost of final plan preparation for sewerage and sewage treatment facilities," for the district. By telegram on March 10, 1960, the Commission replied that if favorable action were taken on the article, an extension would be approved, provided that the extension was for "the purpose of completing final plans and specifications in order that an article can be included in the 1961 warrant whereby the disposal plan can be implemented." This was followed on March 14 by a letter to the same effect. However, the article in the warrant was passed over. Shortly thereafter, upon petition of the district, a rehearing on the order of December 9, 1959 was granted on May 12, 1960, although the time limit for such had expired under RSA 541:3.

The appeal from the decision upon the rehearing is based mainly on the argument that when Order No. 553 was issued on January 30, 1956, a plan had been on foot to use the area known as Langdon Park, adjacent to the portion of Baker River which it was proposed to clear of pollution, as a public recreational ground which would include bathing facilities in the river. This plan has since been abandoned. Therefore it is urged that to move the sewage outlet some two thousand feet downstream, as required by the order, would merely result in cleaning up a small section of the stream at a cost of some $28,000, excluding the expense of buying and clearing the land, and would be of no real benefit to anyone. Furthermore, it is urged that this action "would not fit into a long-range program to abate the pollution both on the Baker River and on the larger and more important river to which it is a tributary, the Pemigewasset River." See Laws 1959, c. 243, supra, s. 2.

The district introduced evidence that it was not economically feasible to clear this small portion of the Baker stream without integrating this action into a comprehensive plan to rid both Baker and the Pemigewasset from pollution, that only a disposal plant offered a practical solution, and that such a plant to abate pollution of the district sewage would cost some $750,000 to $800,000. The district argues that the Commission exceeded its authority in conditioning an extension of time for compliance with Order No. 553 on the implementation of a plan for a disposal plant for the entire district.

The question presented by this appeal is a troublesome one. We fully recognize the vexatious, costly and difficult problem posed to many municipalities in general and to this district in particular by RSA ch. 149, the water pollution act, although the necessity and the ultimate benefit to be gained from the legislation, as well as its constitutionality, are firmly established. *Shirley* v. *Commission*, 100 N. H. 294. On the other hand, the Commission's task in many, if not most instances, is bound to be both thankless and frustrating. Under Section 8 of the act (RSA 149:8), it must enforce the legislative classification of streams by appropriate action. *Shirley* v. *Commission, supra,* 297. Indisputably, the original order when issued was both reasonable and lawful. If every town or district is to be permitted to indefinitely postpone action on the Commission's orders in the hope that something may turn up to justify inaction — and the temptation to follow this course will be strong — the whole purpose of the law will be seriously impaired, if not defeated.

We cannot overlook the fact that various remedies have been available to the district since the original order was issued on January 30, 1956, some five years ago. The statute provides for reclassification of any area under RSA 149:7 or for a variance under RSA 149:9. Either, if granted, would have remedied the situation. Finally, the district could have requested remedial legislation at the 1957 or 1959 session of the Legislature. It can do so at the session now in progress on the alleged grounds that in the present altered circumstances obeying the order of the Commission will result in an expenditure of some $30,000 without commensurate advantage to the district or to the water pollution project. No such move has been made.

In conclusion, it could reasonably be found that the district admittedly has no definite plans for a disposal plant to be erected at this time or in the immediate future to solve the entire needs of the community. It may be said that the effort to clean up Baker River in this area is at a standstill. The Commission has found in effect that the district has no present intention of taking any action to meet the pollution control requirements on either the Baker or Pemigewasset Rivers.

As a fact-finding tribunal, the Commission was at liberty to accept or reject such portions of the testimony before it as it saw fit. *Clover &c. Co.* v. *Smith Co.,* 96 N. H. 491, 493. That its conclusions are entitled to great weight and are not to be set aside

lightly is the clearly expressed intent of RSA 541:13. In all the circumstances, we cannot say that the order of July 13, 1960 denying a further extension of Order No. 553, is clearly unreasonable or unlawful and it therefore cannot be set aside under RSA 541:13, *supra*. *Public Service Co.* v. *State,* 102 N. H. 66.

The Commission indicated in its telegram of March 10, 1960, and confirming letter four days later to the district, that an extension would be granted if positive action were taken toward making final plans for a disposal plant which could be implemented at the 1961 district meeting. As previously stated, the article in the warrant to this effect was passed over. We do not believe in attaching this condition to the granting of an extension in what appears to be an effort to make some progress, that the Commission acted beyond its powers or that by such action it invalidated its later denial of an extension. It follows that the order is

*Appeal dismissed.*

All concurred.