Hillsborough,
No. 5263.

JOHN L. BOULEY *& a.* v. NASHUA *& a.*

Argued November 4, 1964.
Decided November 30, 1964.

*Clancy & O'Neill* (*Mr. Frank B. Clancy* orally), for the plaintiffs.

*Hamblett, Kerrigan & Hamblett* (*Mr. Joseph M. Kerrigan* orally), for the defendant Bouchard.

*Leo R. Lesieur,* for the city of Nashua, furnished no brief.

DUNCAN, J. This is an appeal from a decision of the Nashua zoning board of adjustment granting to the defendant Bouchard a variance under the Nashua zoning ordinance to permit the erection of a filling station on land at the corner of Amherst Street and Sargent Avenue in Nashua. The premises are the same as to which the plaintiffs Bouley sought to enforce restrictive covenants in the companion case of *Bouley* v. *Nashua,* 106 N. H. 74.

This appeal to the Superior Court from the decision of the zoning board was taken by the plaintiffs Bouley as owners of the adjoining premises at 4 Sargent Avenue and by owners and residents of property at 93 Amherst Street, located just north of the Bouchard lot and of 48 and 46 Cushing Avenue, in the same city block, which is zoned as a part of a single-residence or "A" district.

The appeal was heard by the Superior Court (*Leahy,* C.J.) upon evidence consisting of the record of the hearing before the zoning board of adjustment, and the testimony of witnesses called by the parties. The Trial Court made findings and rulings in writing. These included findings that the board had considered all issues pertinent under the ordinance and made

appropriate findings thereon. The Court ruled that the "plaintiffs have failed to sustain the burden of proof to show that the order of the Board is unreasonable, unjust or unlawful." In response to requests filed by the defendant Bouchard the Court also ruled that there was evidence to support the decision of the board, and that the decision was neither unreasonable nor unlawful. The plaintiffs' exceptions to these and other findings and rulings, and to the denial of certain requests for findings and rulings were reserved and transferred by the Presiding Justice.

Some of the essential facts appear from the following findings by the Trial Court. "8. That, under the Zoning Ordinance, an 'A' zone, which is the most restricted district under the Nashua Zoning Ordinance, is entitled 'Single Family Residence District', a 'B' zone is entitled 'Two-family Residence Districts', and a 'C' zone is entitled 'Multiple Residence Districts', in none of which zones a service or gasoline station is permitted. 9. That the Zoning Ordinance of the City of Nashua, enacted originally in 1930, placed the Bouchard property in a B and C zone, and by the 1957 amendment to the Zoning Ordinance, said lot was placed entirely in an 'A' residence zone. 10. That the city block, i.e., area surrounded by Amherst Street, Sargent's Avenue, Dartmouth Street and Cushing Avenue, is in fact predominantly a large single family residential district, and is zoned as such, i.e., 'A' zone. 11. That, on the easterly side of Sargent's Avenue, opposite the Bouchard lot, is a large tract of land owned by said City, upon which are located a grammar school, a swimming pool, tennis courts, skating rinks, playgrounds and a large athletic stadium. 12. That, on the southerly side of Amherst Street, divided from the Bouchard lot by a main thoroughfare, is a 'B' zone, in which are located large multiple dwellings constructed prior to the enactment (in 1930) of the Zoning Ordinance. 13. That other non-conforming uses of properties located in said 'B' zone on the southerly side of Amherst Street are stores and markets which were in existence in 1930 prior to the enactment of the Ordinance. 14. That the granting of a variance by the Zoning Board, on October 1, 1956, to the owner of premises at the corner of Amherst and Bennett Streets, the same being in a 'C' zone, at that time, occurred prior to the enactment, on September 10, 1957, by the Board of Aldermen of said City of Nashua, of the amended Zoning Ordinance of said City, wherein the Bouchard lot, as

aforesaid, was placed in an 'A' zone, and said premises at Amherst and Bennett Streets was placed in a 'B' zone. 15. That other gasoline or service stations, cited by the appellee Bouchard, as being in existence on Amherst Street near Vernon Street, near Essex Street, near the overpass at F. E. Everett Highway, and near Wellman Street, and a market (in local business district) at Charlotte and Amherst Streets, are variously located by the Deputy City Engineer at from about eighteen hundred (1800') feet to about four thousand (4000') feet, respectively, distant from the Bouchard lot.

"The Court had a view of the Bouchard lot and finds it to be in a deteriorating state. There is a billboard on it and that billboard has been there for some time. There also appears to be some debris from the tree which was cut down, which is still lying in the lot. The lot itself is somewhat below street level and would require fill. Because of the peculiar situation of this lot, with its greatest street frontage on Amherst Street and the large amount of traffic over Amherst Street, it is found as probable by this Court that no person would ever purchase this lot for the purpose of erecting a residence on it. It seems to be the one remaining lot out of the original tract as laid out many years ago, upon which no house has been built."

As the Court also found: "Amherst Street divides the 'A' zone from what is now a 'B' zone in [the] area" in question. From the evidence it appeared that on the side of Amherst Street on which the defendant's lot is situated, in the distance of approximately 2,400 feet from the nearest line of a C residence zone on the edge of North Common, to the further end of Edgewood cemetery on the other side of the lot, there is only one residence. This is the single-family dwelling at Cushing Avenue, adjoining the defendant's lot. North of this dwelling is the cemetery, also zoned as "A residence," and south of the defendant's lot is the common, zoned as "B residence."

The major argument advanced by the plaintiffs in support of their exceptions is that the record before the zoning board and the record before the Superior Court are both devoid of evidence of "unnecessary hardship" which would warrant the granting of a variance. RSA 31:72 III. The question of "unnecessary hardship" has received extended consideration in earlier decisions of this court. In *Fortuna* v. *Zoning Board of Manchester*, 95 N. H. 211, it was pointed out that a variance may be granted only when the requirements specified by the statute are

found to exist; and that "any hardship suffered by the defendant as a result of the interference with its right to use its property as it sees fit, although no public or private rights are injuriously affected thereby, is an unnecessary hardship." *Id., pp.* 213, 214. In *St. Onge* v. *Concord*, 95 N. H. 306, the matter of unnecessary hardship was again in issue, and it was stated that "financial hardship in and of itself does not warrant a variance." *P.* 308. It was there held by a majority of the Court that the hardship complained of by the plaintiff was "not required to give full effect to the purpose of the ordinance" (*Id. p.* 308) and that it was properly found to be unnecessary hardship entitling him to a variance. See also, *Mater* v. *Dover*, 97 N. H. 13.

There was evidence in the case before us that the defendant's lot could be sold for filling station use for $17,500, but that its value for residential purposes was not over $3,000. This was evidence of hardship, and if unnecessary to accomplish the purposes of the ordinance was "unnecessary" hardship.

From the standpoint of abutting owners, the proposed use was doubtless less desirable than use for residential purposes, even though the defendant's lot in its existing condition was "deteriorating," and might be thought to present a fire hazard. While the proposed use was objected to by nearby residents, there was testimony before the Court indicating that the erection of a filling station on the defendant's lot, as contrasted with continuation of the existing use as a vacant lot, would enhance the value of the neighboring residences.

From the standpoint of the public, in addition to the questions of appropriate use, traffic hazards were to be considered. So also were the needs of the traveling public using Amherst Street in increasing numbers, as a means of access to the interstate highway to points north, and to two major arteries to points west.

From the standpoint of the defendant owner, much was to be said on behalf of the variance, since the proposed use was not to be precluded unless it was reasonable that it should be. *Stone* v. *Cray*, 89 N. H. 483, 488. At the hearing before the board, little testimony was introduced, and the petition was heard primarily upon the statements and arguments of counsel. The issue of hardship however was not overlooked.

All of the residences within the city block bounded by Amherst, Cushing, and Dartmouth Streets and Sargent Avenue face away

·from heavily traveled Amherst Street, except the single dwelling house of the plaintiffs Vencius and Richard C. Bouley on the small lot bordered by Amherst Street, Cushing Street and the defendant's vacant lot. These two properties between the cemetery and the common face a "C residence" zone across Amherst Street where multiple dwellings predominate, and some commercial undertakings are carried on either as nonconforming uses or by virtue of prior variances. See *Gelinas* v. *Portsmouth*, 97 N. H. 248.

Variances are provided for by zoning statutes so that litigation of constitutional questions may be avoided and a "speedy and adequate remedy afforded" (Bassett, Zoning (1940), *p.* 122), in cases where "special conditions" (RSA 31:72 III *supra*) or exceptional environment may be thought to present such questions. *Nectow* v. *Cambridge*, 277 U. S. 183, 188. See 58 Am. Jur. 1046, "Zoning" *s.* 196.

At the hearing before the Superior Court, the evidence tended to show that the defendant's lot was undesirable for residential purposes, and that the proposed filling station use would not substantially injure adjoining properties or be contrary to the public interest. See *Suprenant* v. *Nashua*, 101 N. H. 43. Considering the record as a whole, neither the board nor the Court can be held as a matter of law to have erred or to have acted unreasonably (RSA 31:78), in deciding that "owing to [the] special conditions [arising out of the situation of the defendant's lot] a literal enforcement of . . . the ordinance will result in unnecessary hardship. . . ." RSA 31:72 III. "The facts being found, the action to be taken thereon is prescribed by law." *Sundeen* v. *Rogers,* 83 N. H. 253, 260.

Section 19B of the Nashua ordinance provides that in an industrial district, "and upon approval by the Board of Adjustment" in a general business district, a filling station may be permitted, provided no entrance or exit "shall be within 200' of the property line of any school [or] playground . . . or within 100' of any residence district. . . ." The Superior Court granted the plaintiffs' request for a finding that the proposed entrance or exit "on the Bouchard lot" is within two hundred feet of the Amherst Street school and playground and within one hundred feet of "residence districts." The plaintiffs suggest that the cited section of the ordinance accordingly precludes the granting of the variance.

Since the Bouchard lot is itself located in a residence district

where filling stations are not a permitted use, section 19B adds nothing to the plaintiffs' case. By its terms the section is inapplicable to residence districts. If it suggests a standard which may be considered by the board in any filling station case, it still cannot operate to deprive the board of its statutory powers granted by the Legislature. In our opinion section 19B, like other sections of the ordinance, is subject to variance in accordance with the applicable standards.

Other issues presented by the plaintiffs' exceptions have been considered, but disclose no error. The order is

*Exceptions overruled.*

All concurred.