Hillsborough,
No. 6111

HAROLD P. VANNAH & a

*v.*

TOWN OF BEDFORD

April 5, 1971.

*Wiggin, Nourie, Sundeen, Pingree & Bigg ( Mr. Dort S. Bigg* orally ), for Harold P. and Therese M. Vannah.

*Sheehan, Phinney, Bass & Green* and *E. Paul Kelly* (*Mr. Kelly* orally ), for the town of Bedford.

LAMPRON, J. Appeal to the superior court under RSA 31:77 ( supp. ) from the denial by the Board of Adjustment of plaintiffs' request for a variance from the terms of the defendant town's zoning ordinance for the purpose of building a gasoline service station on their property on Route 3 situated in a "Residential and Agricultural" district. Hearing with a view, before a Master ( *Robert W. Pillsbury*, Esq. ) resulted in certain findings and rulings, a conclusion that the decision of the Board was unreasonable and a recommendation that the Board's order be vacated and the matter "remanded to the Board for further consideration of the question whether this request for variances should be granted in light of the Master's findings and rulings . . . ." The master's report was approved by *Flynn*, J. who remanded the matter "to the Board of Adjustment for such further proceedings, not inconsistent with the Report of the Master, as justice may require." The exceptions of the parties to the denial of their respective objections to the master's report together with their other exceptions of record were reserved and transferred.

A transcript was made of the hearing before the Board of Adjustment held on May 19, 1969. At that hearing plaintiffs presented the testimony of plaintiff Therese Vannah, that of a realtor and appraiser, of a representative of the oil company holding an option to purchase the Vannah property, and also the testimony of a transportation consultant and of a psychiatrist who has treated plaintiff Harold Vannah. There was also testimony by a selectman of the town, by residents of Park Drive located northerly of the Vannah property, and of others who testified or asked questions.

The minutes of the Board of Adjustment relating to the disposition of this matter read as follows:

"Therese Vannah—Service Station—The Board unanimously voted the following resolution: petition denied.

"The Board considered the petition on the merits of the case and found

"1. That the appeal is contrary to the public interest due to the increased traffic congestion such a use would create. Traffic would be impeded in a northerly direction on Route 3. When the Omega property [located across the highway from plaintiffs'

premises] is developed, traffic would be impeded in both a northern and southern direction on Route 3.

" It was found that to grant the petition would violate the spirit of the ordinance as the ordinance requires that there be a minimum of 2 miles distance between service stations. In addition, the Zoning Ordinance that was enacted February 27, 1967 makes specific provision for Highway Commercial Activities.

" The Board found that substantial justice is done with this decision as there was testimony that the property is valued at $20,000 as a residence in a normal residential area and evidence was presented by means of a letter from Walter J. Dunfey dated April 10, 1969, making a bona fide offer of $35,000, plus $3,000 for relocating the building.

" The question of jurisdiction in the matter of the Vannah appeal was considered by the Board of Adjustment. "

It is well established law in this jurisdiction that on appeal the decision of the Board of Adjustment " shall not be set aside or vacated, except for errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that said order or decision is unjust or unreasonable. " RSA 31:78; *Glidden* v. *Nottingham*, 109 N.H. 134, 244 A.2d 430 ( 1968 ).

At the hearing before the master, the plaintiffs had the burden of proving that the order of the Board of Adjustment denying the variance was unreasonable or unlawful. *Mills* v. *Manchester*, 109 N.H. 293, 295, 249 A.2d 679, 681 ( 1969 ). Furthermore all findings of the Board upon all questions of fact " shall be deemed to be prima facie lawful and reasonable. " RSA 31:78. In order to set aside the action of the Board it is not sufficient that the master found on the evidence before him that each of the statutory prerequisites for a variance had been established. *Sweeney* v. *Dover*, 108 N.H. 307, 309, 234 A.2d 521, 522 ( 1967 ). To warrant such action the master must further find and rule, after resolving all doubts in the evidence in favor of the Board's determination, that on the balance of probabilities the Board could not reasonably find, as it did, that the plaintiffs' evidence failed to meet the requirements for granting of the variance sought. *Id.* at 310, 234 A.2d at 523; *see Metropolitan Bd. of Zon. App.* v. *Standard Life Ins. Co.*, 251 N.E.2d 60, 61 ( Ind. App. 1969 ).

A primary rule on such an appeal is that the master or the court cannot substitute its judgment for that of the Board in

areas of factual disputes or for the exercise of the authority vested in the Board of Adjustment. *Kramer* v. *Bd. of Adjustment*, 45 N.J. 268, 296, 212 A.2d 153, 169 ( 1965 ); 2 Rathkopf, The Law of Zoning and Planning 65-25 ( 1964 ). RSA 31:66, 72 ( III ) manifest a legislative intent to vest in a local board, whose members live close to the circumstances and conditions, authority to determine the public need and the means of meeting it in cases like the present one. *Mater* v. *Dover*, 97 N.H. 13, 14, 15, 79 A.2d 844, 846 ( 1951 ). It is only when the board has acted illegally, unjustly, or unreasonably that the courts can grant relief on appeal. *Mills* v. *Manchester*, 109 N.H. 293, 295, 249 A.2d 679, 681, ( 1969 ); *see Stiles* v. *Town Council*, 159 Conn. 212, 268 A.2d 395 ( 1970 ). In arriving at a decision, the members of the board can consider their own knowledge concerning such factors as traffic conditions, surrounding uses, etc., resulting from their familiarity with the area involved. *Smith* v. *Zoning Board*, 103 R.I. 328, 237 A.2d 551 ( 1968 ).

The transcript of the evidence produced before the Board of Adjustment was made a part of the record of the hearing before the master on plaintiffs' appeal. In addition thereto the town presented testimony by the Clerk of the Board of Adjustment, by a selectman who had testified at the hearing before the Board, and by the occupant of a house owned by the abutter to the north of plaintiffs' premises. Plaintiffs offered the testimony of a traffic engineer. This evidence could be used by the master in addition to the transcript to assist him in evaluating the action of the Board and in arriving at his conclusions. *Sweeney* v. *Dover*, 108 N.H. 307, 309, 234 A.2d 521, 522 ( 1967 ).

The master found that plaintiffs' premises are abutted on the south and east and across Route 3 on the west by commercial districts. Located therein are a large shopping mall, a large motel and convention center, a multi-story department store, several satellite stores, and a large parking area. " To the west are the beginnings of a commercial development of somewhat indeterminate, but clearly large, size to include a branch bank and a building of 105, 800 square feet. " " The Vannah property has been aptly described as a residential peninsula in a sea of commercial uses . . . . "

Harold Vannah first occupied plaintiffs' premises in 1959 and purchased them in 1960 for $10,000. Thereafter plaintiffs have spent $8,000 for improvements. " In 1962 and 1963 the sur-

rounding premises were residential, and the residences were situated in a meadow, including plaintiffs'. The meadow still exists, but not to the immediate south and west or to the east beyond several hundred feet. There are few trees and little natural or artificial screening of the Mall [to the east and south]. "

The master found that the testimony of Mr. Abbe, Clerk of the Board of Adjustment, " suggested that the Board tended to feel that to grant the variance would be to exercise a power to create a new district and that it did not have such power. [I]t is apparent this attitude infected the Board's consideration of the spirit of the ordinance, vis-a-vis the particular variance requested. " An amendment of the zoning ordinance adopted at the town meeting of 1967 created a " Highway Commercial ( HC ) District " which permitted, among other uses: " Gasoline service station ( a gasoline service station is not permitted to be located within two miles of an existing station ) . . . . " This was the only district in which the ordinance provided for a filling station. The master found that " [n]either the Bedford zoning map or ordinance describes a highway commercial district and such district, in effect, does not exist. Mr. Abbe testified and the Board found that the spirit of the ordinance would be violated if a gasoline service station were to be erected within two miles of another. This is to confuse the letter of a subparagraph of the ordinance with the spirit of the whole. . . . The Master finds and rules that the granting of the variances would not be contrary to the spirit of the ordinance. " This amounts to a ruling that the Board had no rational basis for its contrary conclusion or was influenced by improper considerations. *Sweeney* v. *Dover*, 108 N.H. 307, 310, 234 A.2d 521, 523 ( 1967 ).

In his opening statement at the hearing before the Board, plaintiffs' counsel explored the matter of the Board's jurisdiction: " I have no hesitation in saying that I feel very strongly and confidently that the Board not only has the right but has the obligation of exercising its discretion as to the application of every Bedford Zoning Ordinance . . . . that is before it under proper application and petition. " The Clerk of the Board, who testified before the master admitted that over a period of a year or so there had been some question about the Board's jurisdiction but that the matter had been resolved. "Q. So as far as you're concerned, when you went into this hearing, there wasn't any question on jurisdiction and you were just proceeding on the merits? A.

Yes, I'd say that's right. " The Board in its decision stated that it considered the petition on the merits of the case. We find no basis in the record to warrant the master's conclusion that the Board misconceived its authority to grant the variance requested if the statutory requirements were met.

The master correctly ruled that the above two-mile restriction would not prevent the granting of a variance for a filling station within two miles of another in the residential-agricultural district where plaintiffs' property is located. *Bouley* v. *Nashua*, 106 N.H. 79, 85, 205 A.2d 38, 41 ( 1964 ). However, this would not prevent the Board from considering the prohibition as a standard or factor in deciding whether the variance sought would be within the spirit of the ordinance as a whole. *Id.* The following colloquy occurred in the cross-examination of the Clerk of the Board by plaintiffs' counsel at the hearing before the master. "Q. Well, let me ask you again, what did you determine to be the spirit and intent of the two mile ordinance other than the simple language of two miles? A. That the convenience of the motoring public could most probably be adequately served if gas stations were not closer than two miles. " There was evidence that in this area of Bedford a filling station was located nine tenths of a mile south of plaintiffs' property and another half mile north of their premises. Thus, if the Board had granted the variance there would have been three service stations within a distance of one and one-half miles. The record does not support a finding and ruling by the master that the Board acted unreasonably or illegally when it found that to grant plaintiffs' application would violate the spirit of the ordinance. *Sweeney* v. *Dover*, 108 N.H. 307, 310, 234 A.2d 521, 523 ( 1967 ).

The master further found that "[t]he Board did not note in its decision any consideration of the requirement of unnecessary hardship. It is apparent upon all the evidence that unnecessary hardship exists and the Board impliedly so found . . . . There was evidence by a qualified real estate expert . . . that if the commercial development were not present, plaintiffs' premises would have a fair market value of $20,000 but that the commercial changes have had a dramatic effect upon residential value in that the noise, disturbances, lights and limited privacy have caused the value to drop to $10,000. There was evidence that . . . the optionee had offered $85,000 for the property and that the Dunfey family had offered approximately one-half that

amount . . . . Similarly there was evidence that Mr. Vannah's physical and mental well-being had been affected by the commercial development, and evidence that persons with no preexisting disability would be affected by it. " There was also testimony " that the highest and best use of the premises would be its development for a service station as proposed . . . . The Master finds and rules that unnecessary hardship exists. "

The master's report continues as follows: " The Board found that to grant the variance would be contrary to the public interest in that increased traffic congestion would result. [T]he evidence before the Board as to increased traffic congestion was speculative and uninformed and based in part on the unclear desires and unstated future intentions of the State of New Hampshire in the area. While the Board could use its own every day knowledge and its view of the area and need not have adopted the views of any witness, expert or otherwise, there was convincing evidence from traffic consultants that a gasoline service station on the Vannah premises would not increase the traffic hazard as it would not generate much new traffic, that there was a need to provide service station facilities for the traffic generated by the surrounding commercial enterprises and that other commercial uses generate more traffic than gasoline service stations. Based upon this evidence the Master finds and rules that granting of the variances would not be contrary to the public interest.

" The Master further finds and rules that substantial justice would be done if the variances were granted. "

As pointed out by the master, the Board made no specific finding on the issue of unnecessary hardship. However, it did find " that substantial justice is done with . . . [its] decision as there was testimony that the property is valued at $20,000 as a residence in a normal residential area and evidence was presented by means of a letter from Walter J. Dunfey dated April 10, 1969, making a bona fide offer of $35,000, plus $3000 for relocating the building. " A hardship results " if a restriction upon use, when applied to a particular property, becomes arbitrary, confiscatory, or unduly oppressive because of conditions of the property distinguishing it from other properties similarly restricted. " *St. Onge* v. *Concord*, 95 N.H. 306, 308, 63 A.2d 221, 223 ( 1949 ). An unnecessary hardship is one " suffered by the defendant as the result of the interference with its right to use its property as it sees fit, although no public or private rights are injuriously

affected thereby . . . ." *Fortuna* v. *Zoning Board*, 95 N.H. 211, 213-14, 60 A.2d 133, 135 ( 1948 ).

The fact that plaintiffs would obtain a larger profit from the sale of their property for use as a filling station as opposed to its sale for another purpose within the requirements of the ordinance does not warrant, in and of itself, the granting of a variance. *St. Onge* v. *Concord supra*; *Appeal of Gro*, 440 Pa. 552, 555, 269 A.2d 876, 878 ( 1970 ); *Ferry* v. *Kownacki*, 396 Pa. 283, 152 A.2d 456 ( 1959 ). This is equally true of the fact that properties abutting and adjoining plaintiffs' have been re-zoned and that as a consequence plaintiff Harold's disabilities have been aggravated. *Germenko* v. *County Bd. of Appeals*, 264 A.2d 825 ( App. Ct. Md. 1970 ); *see Aronson* v. *Board of Appeals*, 349 Mass. 593, 211 N.E.2d 228 ( 1965 ). All of these factors have to be balanced against the injurious effects on public rights which might result from the granting of the variance sought. *Fortuna* v. *Zoning Board supra.*

The Board found that public rights would be injuriously affected by the granting of the variance because of the increased traffic and the traffic patterns which would result from the use of plain-tiffs' property as a filling station. *Mater* v. *Dover*, 97 N.H. 13, 15, 79 A.2d 844, 846 ( 1951 ); *see Marple Township Appeal*, 440 Pa. 508, 515, 269 A.2d 699, 702 ( 1970 ). There was evidence to the contrary by expert witnesses. However, the Board could properly rely on its own knowledge of the area resulting from its familiarity therewith in arriving at its conclusion. *Smith* v. *Zoning Board*, 103 R.I. 328, 237 A.2d 551 ( 1968 ). It did not have to accept the conclusions of the experts. *See O. K. Fairbanks Co.* v. *State*, 108 N.H. 248, 252, 234 A.2d 108, 111 ( 1967 ); *Plymouth Fire District* v. *Water Pollution Comm'n.*, 103 N.H. 169, 173, 167 A.2d 677, 679 ( 1961 ). The record does not warrant a ruling by the master that the conclusions of the Board in this respect were unreasonable.

The fact that the master sitting as a board of adjustment would arrive at a different result is not sufficient to set aside the decision of the Board. Only if the decision of the Board could not be reached, either in whole or in part, by reasonable men was it subject to modification or vacation by the trial court. RSA 31:83. In our opinion the statutory presumption ( RSA 31:78 ) that all findings of the Board were prima facie lawful and reasonable has not been overcome. *Sweeney* v. *Dover*, 108 N.H. 307, 310,

234 A.2d 521, 523 ( 1967 ). The decree of the trial court is vacated and the order is

*Appeal dismissed.*

All concurred.