Department of Environmental Services
No. 2006-703

## APPEAL OF REGENESIS CORPORATION
### (New Hampshire Department of Environmental Services Waste Management Council)

Argued: May 10, 2007
Opinion Issued: November 30, 2007

*Sheehan Phinney Bass & Green, P.A.*, of Manchester (*Edward A. Haffer* and *Robert P. Cheney* on the brief, and *Mr. Haffer* orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Jennifer J. Patterson*, senior assistant attorney general, on the brief and orally), for the State.

*Anderson & Kreiger, LLP*, of Cambridge, Massachusetts (*Douglas H. Wilkins* and *Jeffrey L. Roelofs* on the brief, and *Mr. Wilkins* orally), for intervenor Citizens for a Future New Hampshire.

*Wadleigh, Starr & Peters, PLLC*, of Manchester (*Ronald J. Lajoie* and *Michael J. Tierney* on the brief, and *Mr. Tierney* orally), for intervenor Resident's Environmental Action Committee for Health, Inc.

BRODERICK, C.J. The petitioner, Regenesis Corporation (Regenesis), appeals from a decision of the New Hampshire Department of Environmental Services Waste Management Council upholding a hearing officer's decision revoking the petitioner's solid waste permit. We affirm.

## I

In November 2004, the New Hampshire Department of Environmental Services (DES) issued a notice of proposed license action (NPLA) seeking to revoke the solid waste facility permit held by Regenesis that authorized it to store and use wood fuel derived from construction and demolition debris at a facility in Hopkinton. The NPLA alleged that Regenesis officials made false or misleading statements to DES during the course of permit proceedings, calling into question whether Regenesis had the reliability and integrity to operate a solid waste facility. Citizens for a Future New Hampshire (CFNH), Resident's Environmental Action Committee for Health, Inc. (REACH) and the Town of Hopkinton (Town) all intervened in the revocation proceeding. In March 2005, DES issued an amended notice of proposed license action (ANPLA), which contained additional allegations regarding false and misleading statements and omissions on the part of Regenesis.

Following a three-day evidentiary hearing at which seven witnesses testified and all five parties were represented by counsel, the DES hearing officer issued a ninety-two-page decision revoking Regenesis' solid waste permit. Regenesis appealed to the waste management council (council). *See* RSA 21-O:9, V, :14 (2000). CFNH and REACH also filed appeals and the Town intervened. After a non-evidentiary hearing, the council affirmed the revocation of the permit. Regenesis, DES, CFNH and REACH all filed for rehearing or clarification. In a written decision issued in September 2006, the council denied all parties' motions.

Regenesis appeals, arguing that: (1) the council erred in affirming the hearing officer's revocation decision, which was unreasonable and unlawful; (2) the sanction imposed is unconstitutionally excessive and disproportionate; and (3) to the extent that the decision makes findings and rulings that were unnecessary to the determination of the alleged violations, those findings and rulings should be vacated. The State cross-

appeals, arguing that the council erred in finding that the certification language in RSA 149-M:9 is limited to existing officers, directors or partners. CFNH cross-appeals, arguing that: (1) the permit should have been revoked on the additional ground that Regenesis' officials lack sufficient reliability and integrity to operate a solid waste facility; and (2) Bio Energy/Regenesis did not provide proper public notice in connection with the solid waste permit applications. REACH cross-appeals, arguing that the council erred: (1) in adopting the hearing officer's decision that Regenesis officials did not lack integrity and reliability; and (2) in determining that the certification requirements of RSA 149-M:9 did not require disclosure of a felony conviction for an officer who left the company less than 100 days prior to the certification.

Since 1983, Bio Energy Corporation and its successor, Bio Energy, LLC, have operated a wood incinerator facility, burning wood chips to produce electricity and steam. From 1983 to 2002, Bio Energy Corporation's sole shareholders were William Dell'Orfano and Anthony DiNapoli, each owning fifty percent. Throughout that period, Dell'Orfano served as Bio Energy Corporation's president and, at different times, either Dell'Orfano or DiNapoli served as treasurer and secretary and both served as directors.

On October 9, 2001, Bio Energy Corporation submitted an application to the Division for a permit to construct and operate a solid waste facility. At that time, DiNapoli was an officer, director and fifty percent shareholder of Bio Energy Corporation. The Division requested a background investigation from the environmental protection bureau (EPB) in connection with the initial application and, as part of that investigation, on October 15, 2001, DiNapoli submitted a personal history disclosure form to the attorney general's office, including a sworn statement that he had no criminal convictions. Three days later, on October 18, 2001, DiNapoli was indicted for witness tampering. On November 5, 2001, the attorney general's office performed a criminal check of DiNapoli that did not uncover the recently filed charges. On March 20, 2002, the attorney general's office, still unaware of the indictment, forwarded the results of its Bio Energy Corporation background investigation to DES. On March 25, 2002, while the initial permit application was still pending with DES, DiNapoli was convicted in Hillsborough County Superior Court of felony witness tampering. On May 28, 2002, DES issued a solid waste permit to Bio Energy Corporation, without knowledge of DiNapoli's conviction.

Dell'Orfano learned of DiNapoli's conviction in June 2002. Dell'Orfano realized that DiNapoli's conviction was a "problem" for Bio Energy. Bio Energy Corporation's principals were preparing to dissolve the company and transfer its assets to a new company, Bio Energy, LLC, in which

DiNapoli was an officer, director and shareholder of more than ten percent. Transfer of the solid waste permit required DES approval through a type IV permit modification application, which required certification on behalf of both the existing and proposed permit holders that no officers, directors, or owners of more than ten percent have been convicted of a felony within the prior five years. *See* N.H. ADMIN. RULES, Env-Sw 303.14, 315.08.

Upon reviewing the type IV application form and the solid waste rules, Dell'Orfano concluded that he could not truthfully make the required certification on behalf of Bio Energy Corporation or Bio Energy, LLC. Instead, Dell'Orfano persuaded DiNapoli to resign from Bio Energy Corporation and decided to transfer the solid waste permit to Regenesis, a company with which DiNapoli was not involved. DiNapoli resigned as an officer and director of Bio Energy Corporation on August 29, 2002. Bio Energy Corporation had been dissolved on August 28, 2002, the day before DiNapoli resigned. Its assets, including the Bio Energy facility, the buildings, the underlying property, most of the equipment and machinery and all permits, licenses, authorizations and approvals issued or granted by a governmental agency, had been transferred to Bio Energy, LLC on June 12, 2002. DiNapoli remained an officer, director and shareholder of more than ten percent of Bio Energy, LLC.

In early December 2002, Bio Energy Corporation, Bio Energy, LLC and Regenesis filed an application with DES to transfer the permit from Bio Energy Corporation to Regenesis. The corporations gave the same mailing address as Bio Energy, LLC and the check accompanying the application was drawn on a Bio Energy, LLC account. Corporate officials represented to DES and the attorney general's office that the four individuals who would be required to complete personal history disclosure forms had already completed the forms in connection with the previous Bio Energy background investigation. With the exception of DiNapoli, the officers and directors of Regenesis were the same as the officers and directors of Bio Energy Corporation.

As part of the transfer application, Dell'Orfano certified on December 2, 2002, on behalf of Bio Energy Corporation and Regenesis, that no individual holding ten percent or more of either entity's debt or equity, and none of either entity's officers, directors, partners or managers had been convicted of a felony during the five years before the date of the application. At no point during the application process did Bio Energy Corporation or Regenesis inform DES of the transfer of the permit to Bio Energy, LLC, nor was DES informed that other environmental permits associated with the facility were not held by Regenesis but by Bio Energy, LLC. On the transfer application Dell'Orfano signed a statement on behalf

of the existing permittee, Bio Energy Corporation, and the proposed new permittee, Regenesis, that "[t]o the best of my knowledge and belief, the information and material submitted herewith is correct and complete. I understand that any approval granted by DES based on false and/or incomplete information shall be subject to revocation or suspension." The permit transfer was approved on March 28, 2003.

On March 4, 2005, DES issued the NPLA against Regenesis. The NPLA and the ANPLA alleged that Dell'Orfano made a false or misleading statement when he certified on December 2, 2002, that none of Bio Energy's officers or directors had been convicted of a felony in the five years prior to the application for permit transfer, and that Regenesis officials' false or misleading statements and omissions to DES in the course of the permit proceedings called into question whether Regenesis had the reliability and integrity to operate a solid waste facility. Regenesis objected to the proposed permit revocation and denied that it had wrongfully withheld information about the conviction or that it had in any way violated or failed to comply with the solid waste statutes and rules. Specifically, Regenesis asserted that Dell'Orfano's certification was true because DiNapoli sold his interest in Bio Energy Corporation before the December 2002 transfer application that contained the certification.

Following a hearing, the hearing officer issued a decision revoking the permit. The hearing officer's decision contains numerous findings that Regenesis' officials acted in a false or misleading manner by failing to inform DES of DiNapoli's felony conviction or of his resignation from Bio Energy Corporation, or of his continued involvement with the facility through Bio Energy, LLC, and by failing to inform DES of the dissolution of Bio Energy Corporation and the transfer of its assets, including its environmental permits, to a different entity. The hearing officer noted "[t]he importance that the Legislature ascribed to preventing organizations associated with convicted felons from obtaining solid waste permits" and the provisions in the statute and rules to this effect. The hearing officer rejected Regenesis' contention that Dell'Orfano's certification was truthful. He stated:

> The "existing permittee" in the 2002 transfer application was Bio Energy Corporation. The application was submitted to DES on December 6, 2002. Mr. DiNapoli had been an officer in the corporation, and he had been convicted of a felony on March 25, 2002. Mr. Dell'Orfano's certification that no corporate officer or director had been convicted of a felony within five years of the application date was not rendered true by the mere device of having Mr. DiNapoli resign from the corporation. The

certification was not complete, it was less than candid, and it was literally false.

Because it was false, it was also misleading. Lacking accurate information about Mr. DiNapoli's criminal background, DES approved the transfer of the permit to Regenesis on March 28, 2003 without knowledge that Bio Energy Corporation might not be eligible to hold it or transfer it. The original permit had been issued to Bio Energy on May 28, 2002, after Mr. DiNapoli's conviction (he, too, having failed to amend or withdraw a Personal History Disclosure Form that was no longer accurate), a circumstance that made the permit voidable, rather than transferable.

The hearing officer also addressed the question of whether revocation was an appropriate sanction for the company's failure to be candid about the felony conviction. He concluded that the permit should be revoked. As he stated:

DES proved by a preponderance of the evidence that the Bio Energy Corporation solid waste permit was transferred to Regenesis based, in part, on the false and misleading certification by Mr. Dell'Orfano that no corporate principals had been convicted of a felony within the relevant five year period. The false certification by Mr. Dell'Orfano in his role as agent for both Bio Energy Corporation and Regenesis, misled DES with respect to whether the existing permittee met an important statutory and regulatory criterion for holding a solid waste permit. Mr. Dell'Orfano's provision of the false and misleading certification that no corporate principal has been convicted of a felony within five years of the transfer application is good cause to revoke the permit.

The hearing officer declined to revoke the permit on the alternative ground that Regenesis lacked the reliability and integrity to operate a solid waste facility. He also concluded that the company properly notified abutters in the 2002 permit transfer proceedings and 2003 permit modification proceedings.

Regenesis appealed the permit revocation to the council. The council ruled that the certification language contained in RSA 149-M:9 "is limited to existing officers, directors or partners not past officers, directors or partners." Nevertheless, the council affirmed, stating that it agreed with all other findings and conclusions reached by the hearing officer and "that

these, even absent the certification language finding, are sufficient to support the decision to revoke the permit."

## II

To prevail on appeal, Regenesis must show that the hearing officer's decision and the council's order affirming it were "clearly unreasonable or unlawful." RSA 541:13 (2007). The hearing officer's findings of fact "shall be deemed to be prima facie lawful and reasonable" and the decision "shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." *Id.* The presumption that the hearing officer's findings of fact are deemed *prima facie* lawful and reasonable may be overcome only by a showing that there was no evidence from which he could conclude as he did. *See Appeal of Basani,* 149 N.H. 259, 261-62 (2003). As a fact-finder, the hearing officer was at liberty to accept or reject the testimony before him as he saw fit and his conclusions are entitled to great weight. *See Plymouth Fire District v. Water Pollution Comm'n,* 103 N.H. 169, 173-74 (1961).

## III

Pursuant to the New Hampshire Solid Waste Management Act, RSA chapter 149-M (2005 & Supp. 2007) (Act), no person may operate a solid waste facility, or transfer a solid waste permit to any other person, without prior approval from DES. RSA 149-M:9, I, XII. Under the Act, the commissioner of DES has adopted administrative rules to implement the permit system. N.H. ADMIN. RULES, Env-Sw 100 *et seq.* (solid waste rules).[1] Within DES, the waste management division (Division) regulates the management and disposal of solid waste.

DES may deny a corporation's solid waste permit application if "any of its officers, directors, partners, key employees or persons or business entities holding 10 percent or more of its equity or debt liability has been convicted of . . . a felony in any state or federal court during the 5 years before the date of the permit application." RSA 149-M:9, IX(c). Under the solid waste rules, an applicant for a solid waste permit, whether through initial application or permit transfer, must certify that no individual holding ten percent or more of the applicant's debt or equity, and none of the officers, directors, partners or managers have been convicted of a felony during the five years before the date of the application. N.H. ADMIN. RULES, Env-Sw 303.14(a), (b)(1). For a permit transfer, both the

---

[1] We note that the solid waste rules have been redesignated from Env-Wm to Env-Sw and we utilize the current designation.

proposed permit holder and the existing permit holder must make this certification. *Id.* 315.03, 315.08.

The Division is authorized to ask the EPB of the attorney general's office to conduct background investigations of individuals and entities affiliated with a solid waste permit application in order to assist in discovering criminal convictions. RSA 149-M:9, III. One of the EPB's forms that applicants must execute under oath in connection with the background investigation is a personal history disclosure form. This form requires an affidavit affirming that it is complete and accurate and instructs the applicant to

> ANSWER COMPLETELY AND TRUTHFULLY.... Be especially careful not to leave out information in a way that might create an impression that you are trying to hide it. For example, a minor criminal conviction probably would not disqualify the applicant, but attempting to conceal the conviction may lead to a finding of untrustworthiness, and result in disqualification. Omitting such information from this form, even unintentionally, may result in your trustworthiness being questioned.

The EPB conducts a criminal record check of the individuals listed as officers and directors of the prospective permit holder. This background investigation is separate from the DES permit proceeding. During the background investigation, the applicant forwards the required forms directly to the EPB, which issues a report to DES at the conclusion of the investigation. The EPB does not review the permit application materials filed with DES.

## IV

The first issue raised by Regenesis is whether the council erred in affirming the hearing officer's revocation of its solid waste permit. Regenesis argues that the hearing officer designated four issues for hearing: reliability and integrity, notice to abutters, certification, and dissolution. According to Regenesis, because the hearing officer resolved the first two issues in favor of Regenesis and the Council rejected his ruling against Regenesis on the third issue, "only the dissolution issue remains as the basis for revocation of [its] solid waste permit . . . [and] the incontrovertible documentary proof is that Regenesis *did* disclose that dissolution." We disagree with this constrained reading of the hearing officer's decision and the issues before him.

The central issue before the hearing officer was whether Regenesis' course of conduct during the permitting process was sufficiently false or misleading to justify revoking the company's solid waste permit. Under

the DES solid waste rules, "good cause" for revoking a solid waste permit exists if the permit was issued based upon false or misleading information; if the permit holder violated the Act, RSA chapter 149-M, or its underlying rules; or if DES would have had grounds for denying the permit. N.H. ADMIN. RULES, Env-Sw 306.05. Despite Regenesis' literal parsing of the hearing officer's decision, our review of the record reveals support for his conclusion that the DES permit was issued based upon false or misleading information. The overall course of conduct engaged in by Regenesis officials in submitting the relevant applications was intended to prevent DES from learning of DiNapoli's felony conviction while still a half-owner of Bio Energy Corporation.

█ The record supports the hearing officer's findings that Regenesis omitted relevant facts from its permit transfer application, gave the misleading impression that the officers and key employees for Regenesis were the same as for Bio Energy Corporation, failed to inform DES that the other facility permits were held by a different company with which DiNapoli was still involved, and failed to disclose DiNapoli's conviction despite a direct inquiry by DES concerning DiNapoli's involvement. In addition, the record supports the hearing officer's findings that DiNapoli remained an officer, director and shareholder of Bio Energy, LLC after he resigned from Bio Energy Corporation, that Bio Energy, LLC held all the environmental permits except the solid waste permit (the only permit whose application required disclosure of felony convictions), and that operation of the electric generation facility for purposes of the DES air permit held by Bio Energy, LLC is essentially identical to operation of the solid waste facility for purposes of the solid waste permit held by Regenesis. We hold that the hearing officer's conclusions and the council's order affirming his decision, that Regenesis provided DES with false or misleading information during the permitting process, were supported by the extensive evidence submitted and were neither unjust nor unreasonable.

The second issue raised by Regenesis is whether the sanction imposed, revocation of the permit, is unconstitutionally excessive and disproportionate. Regenesis argues that "[t]o have one's permit revoked for allegedly failing to disclose that an existing permittee was in dissolution" is an "unconstitutional denial of substantive due process, and an unconstitutional taking of a property right." On the issue of remedy, we review an agency's decision regarding the remedial sanction to impose under the unsustainable exercise of discretion standard. *See Appeal of Verizon New England*, 153 N.H. 50, 66 (2005).

■ As discussed above, we do not read the hearings officer's decision as based solely upon the failure of Regenesis to disclose that Bio Energy Corporation was in dissolution. We have affirmed the hearing officer's determination that Regenesis officials acted in a false or misleading manner. The regulatory scheme provides that a permit "shall be revoked if the department determines . . . that [g]ood cause . . . exists." N.H. ADMIN. RULES, Env-Sw 306.04(1). "Good cause" to revoke a permit exists where "[i]ssuance of the permit was based on false or misleading information." *Id.* 306.05(b). The legislature's decision to authorize revocation in such circumstances does not result in an unconstitutionally excessive penalty and we cannot say that the hearing officer's decision to impose this statutorily authorized sanction was an unsustainable exercise of discretion.

Finally, Regenesis proposes that any findings and rulings made by the hearing officer that were "unnecessary to the determination of the 'violations alleged'" be vacated and have no precedential or binding effect. Regenesis cites no authority requiring us to vacate findings and rulings deemed by Regenesis to be unnecessary and we decline to do so.

## V

The State has cross-appealed, arguing that it was unreasonable and unlawful for the council to rule that the certification language contained in RSA 149-M:9 applies only to existing officers, directors and partners. We review an agency's interpretation of a statute *de novo. Appeal of Franklin Lodge of Elks*, 151 N.H. 565, 567 (2004).

RSA 149-M:9, IX(c) provides that DES "may deny a permit application . . . to a person if . . . [i]n the case of a corporation or business entity, . . . any of its officers, directors, partners, key employees or persons or business entities holding 10 percent or more of its equity or debt liability has been convicted of, or pled guilty or no contest to, a felony in any state or federal court during the 5 years before the date of the permit application." The solid waste rule requiring the filing of a compliance certification provides in part:

> (a) The applicant shall certify that each of the statements listed in
> (b) below are true for each of the following individuals and entities:
>   (1) The applicant;
>   (2) The owner;
>   (3) The facility operator;
>   (4) All individuals and entities holding 10% or more of the applicant's debt or equity;
>   (5) All of the applicant's officers, directors, and partners;

(6) All individuals and entities having managerial or supervisory or substantial decision-making authority and responsibility for the management of facility operations or the activity(s) for which approval is being sought . . . .

(b) The applicant shall certify that each of the following statements are true:
(1) No individual or entity listed in (a) above has been convicted of or plead [*sic*] guilty or no contest to a felony in any state or federal court during the 5 years before the date of the application . . . .

N.H. ADMIN. RULES, Env-Sw 303.14.
   The hearing officer determined:

> The certification language refers to the "existing" permittee, but it is not limited to "existing" officers, directors or partners of the existing permittee, as Regenesis now argues. To the contrary, the scope of the certification is defined as "all" of the existing permittee's officers, directors and partners. "All" of an applicant's officers, directors and partners necessarily includes present and former holders of those positions. This requirement derives from the wording of the certification itself, in contrast to the interpretation of the wording argued by Regenesis, which is based on words ("existing" or "current") that do not appear in the statute, rules or application forms.

On appeal, the council modified this finding, concluding that "RSA 149-M:9 is limited to existing officers, directors or partners not past officers, directors or partners."

"In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. We look first to the statutory language itself, and where possible, we ascribe the plain and ordinary meanings to words used." *Green Meadows Mobile Homes v. City of Concord*, 156 N.H. 394, 395 (2007) (citation omitted).

■ We agree with the council's interpretation that the statutory provision is intended to cover those individuals who, at the time of the application, fall within the enumerated categories. The statute's use of the word "holding," indicates that persons currently involved in the company's affairs are those who are intended to fall within the statute's requirements. The five-year time limitation applies to the length of time within which a person was convicted of, or pled guilty or no contest to, a felony in order to

mandate disclosure. A person currently holding ten percent of the company's debt liability would not, for example, have to disclose a felony conviction that occurred six years prior to the application for a solid waste permit. The statutory language does not plainly cover those persons who "have held" stock in the past and we will not read such language into the statute.

We hold that the hearing officer's decision revoking the solid waste permit was supported by the evidence and was not unreasonable. Because of our holding, we need not address the issues raised by the intervenors.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.