GUSTAV PROTOMASTRO, MARIE TIMONEY, VERA PALMA, LOUISE CASILLI, AMADIO DePASQUALE, FORTUNE DePASQUALE, CIRO SELLITTI AND TERESA SELLITTI, JOSEPHINE POLICASTRO, PLAINTIFFS-APPELLANTS, v. BOARD OF ADJUSTMENT OF THE CITY OF HOBOKEN (ALSO KNOWN AS BOARD OF ADJUSTMENT OF THE MAYOR AND COUNCIL OF HOBOKEN), AND AVENEL INDUSTRIAL REALTY CORPORATION, DEFENDANTS-RESPONDENTS.

Argued November 21, 1949—Decided January 9, 1950.

*Mr. Edward Stover* argued the cause for appellants.

*Mr. Nicholas S. Schloeder* argued the cause for respondents (*Messrs. Levenson & Levenson,* attorneys for Avenel Industrial Realty Corporation; *Mr. Dominick H. Rinaldi,* attorney for Board of Adjustment of the City of Hoboken).

The opinion of the court was delivered by

CASE, J.   This appeal from a judgment of the Law Division of the Superior Court to the Appellate Division was certified to us on our own motion.   It concerns a determination by the Board of Adjustment of the City of Hoboken granting a variance from the city zoning ordinance.

The building inspector of the City of Hoboken rejected the application of Avenel Industrial Realty Corporation for a permit to erect a brick store building on property known as 817-825 Bloomfield Street and 816-820 Washington Street because the applicant proposed to build for, and utilize the structure as, a "super market" and the Bloomfield Street frontage was in an area zoned by ordinance for residences and against business erections and business uses. The matter then came before the Board of Adjustment on an appeal which was accorded the status of an application for a variance under *R. S.* 40:55–39(c). The board, after public hearing and against the protests and proofs of objectors, granted the variance. A writ of *certiorari* to review the decision was allowed by the former Supreme Court and heard after the change in the court system by the Appellate Division, which (1 *N. J. Super.* 102) set aside the resolution of the board because it did not contain a finding that "a literal enforcement of the provisions of the ordinance will result in unnecessary hardship," citing *Brandon v. Montclair,* 124 *N. J. L.* 135 (*Sup. Ct.* 1940); affirmed, 125 *Id.* 367 (*E. & A.* 1940), and directed that the matter be remanded "for further action in accordance with this opinion."

After the record had gone down, the board, on February 1, 1949, proceeded to hold a further hearing at which the attorneys for the parties were invited to attend and the objectors were permitted to present additional proof. Two days later, on February 3, 1949, with all members present and voting, the board voted two in favor of and three against a motion to grant the variance. That was clearly intended to be, and just as clearly was accepted as, a final exercise by the board of its power of determination.

The applicant, dissatisfied with that disposition of the cause, gave notice to the board that it would make application to the Appellate Division for directions. Whereupon, on March 9, 1949, not waiting for the application, which in fact never was made, the board met without notice to the objectors and by a vote of four (one member not voting) granted the variance.

The resolution granting the variance was long and contained numerous recitals, among them that the actions on February 1st and on February 3rd were taken under misapprehension of the meaning and effect of the opinion of the Appellate Division, and that the board had later been advised that it was "incumbent upon said Board to confine its consideration to the evidence and record adduced at the time of the former hearing in December, 1947." It further recited the existence of a deed restriction running in favor of the property (a church) on the north and that the owners of the dominant property would waive the restriction in favor of the business structure which the appellant for the variance proposed to erect. The restriction was that the owner of the property in question "will not at any time hereafter erect any building upon said premises except of brick or stone with roof of slate or metal and any building or buildings thereon erected shall not be used for any purpose other than as dwelling houses or single flats and shall not nor shall any portion thereof be used as a saloon or place of sale of spirituous malt or vinous liquors or intoxicants of any kind nor shall there be any windows or openings in the north wall of any building erected thereon and this is hereby made a covenant running with the land and binding on the grantee herein and all subsequent owners." The resolution declared that the circumstance thus stated constituted a special condition by reason of which the literal enforcement of the zoning ordinance would result in an unnecessary hardship and granted the variance. The objectors, by complaint in lieu of *certiorari,* took the record to the Superior Court, Law Division, which affirmed, 3 *N. J. Super.* 539. This appeal is from that affirmance.

The Board of Adjustment, in its resolution of March 9, 1949, acted upon a mistaken conception of the law. It had, after the going down of the record from the Appellate Division, sat in further hearing and accepted sworn proofs which it considered and upon which, in conjunction with the earlier proofs, it rejected the application. Whether that hearing was conducted in all respects in compliance with the law, we are unable, on the record before us, to say. But it was a hearing,

and there was subsequent board action, based thereon, *contra* the application. We find nothing in either the opinion of the Appellate Division or the mandate issued thereon which narrowed the jurisdiction of the board or otherwise controlled its action beyond holding that "before the Board of Adjustment can act it must find necessary jurisdictional facts required by the statute." Respondents' argument that the board could lawfully do only two things, *viz.*, (1) correct its resolution by setting forth the reasons for its action, including a finding of unnecessary hardship in the light of the testimony taken on the first showing or (2) start the proceedings anew, presents an arbitrary curtailment which we do not accept as a correct statement of the law. The body before which the earlier and the later proceedings were had was the same. The five men, who, constituting the full board, were present at and conducted the original hearing on December 18, 1947, still constituted the entire board, and were present at and conducted the meetings of, February 1 and February 3, 1949. The original testimony was taken down stenographically and preserved; indeed, it is a part of the respondents' appendix. Respondents' argument is illogical. It fully supports the action of the board on March 9th in amending and amplifying its first grant of variance. Except by the suggestion, which we discard, of a limitation imposed by court opinion, it fails to explain how the board had the vitality to exercise that and no other control over the case. The proceeding was not ended. In terms the Appellate Court kept it alive for such further action as was in accordance with the opinion. No relevant procedure which was within the province of the board and did not result in a grant of variance without a finding of jurisdictional facts would have been discordant with the opinion. Opening the case for the taking of further proofs was not, of itself, necessarily outside the scope of the board's authority.

The March 9th resolution does not indicate a change of mind from the conclusion, inferrible from the action of February 3rd, that on the proofs then before it, included the February 1st affidavits, the variance ought not to be granted.

Because the board was told that it must do so, it silently struck down the poofs of February 1st, reversed its action of February 3rd, and confined its consideration to the record made up in December of 1947. The board did this and came to its final conclusion, without notice, or giving an opportunity to be heard, to the objectors whose further evidence had been accepted with the obvious implication that it would be considered.

Respondents contend that notice of the hearing on February 1st was required by *R. S.* 40:55–44 and was not given by the objectors. The point is at the best highly technical because both sides actually had notice; and it is not well made. When the resolution granting the variance was set aside the case assumed its original status before the board; that is, the applicant for the variance was re-established as the appellant, appealing from the refusal of the building inspector to grant the permit. Whatever burden of giving notice was imposed by the statute lay upon it.

We hold, not that the board was without jurisdiction to reconsider its decision of February 3rd, but that, having exercised the judicial function of taking testimony and coming to a conclusion on the merits of the case, it was under the duty, before reversing its action, to give the parties notice and an opportunity to be heard. *Cf. McFeely v. Board of Pension Commissioners,* 1 *N. J.* 212.

We are further concerned with the ground on which the conclusion of unnecessary hardship was made, namely, that the land is burdened with a building restriction set up by deed in the chain of title. That was a burden voluntarily accepted by the present owner on his purchase of the property, by the predecessor in title who, in 1895, first took subject to the restriction, and by all intermediate owners. In its effect it is little more than a variation of the ordinance provision limiting the district to residential uses. It is said that the prohibition of any building except of brick or stone with roof of slate or metal excluded wooden dwellings; but not infrequently dwellings are built of stone and many are built of brick. It is said, further, that because of the prohibition

against windows in the north wall of any building erected thereon the land is not available for apartment house use. But there are doubtless many dwelling houses, not of the apartment type, within the zone. There is no showing to the contrary; indeed, it is not shown that any of the residences are of the apartment house type. The criterion of "unnecessary hardship" is whether the zoning limitation, viewing the property in the setting of its environment, is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property. *Scaduto v. Bloomfield,* 127 *N. J. L.* 1 (*Sup. Ct.* 1941). Measured by that standard, we find nothing capricious or arbitrary in the application of the ordinance to the Bloomfield Street frontage. The fact that a non-conforming use is more profitable to the landowner is not of itself a sufficient reason for relief from the zoning restrictions. *Berdan v. City of Paterson,* 1 *N. J.* 199 (*Sup. Ct.* 1948). A zoning ordinance which wrenches a lot from its environment and gives it a new rating that disturbs the tenor of the neighborhood deserves the close scrutiny of the courts, *Linden Methodist Episcopal Church v. Linden,* 113 *N. J. L.* 188 (*Sup. Ct.* 1934); equally, a zoning board determination which accomplishes the same result. We regard the attempted distinction as illusory, without substantial foundation in the objectives toward which the statutory exceptions are directed, and out of harmony with the spirit, intent and general purpose of the statute and of the zoning regulation.

For the reasons stated the judgment of the Superior Court is reversed, and, with it, the action of the Board of Adjustment.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT and ACKERSON—5.

*For affirmance*—Justices WACHENFELD and BURLING—2.