Rockingham
No. 88-054

# Donna E. Rowe

v.

# Town of North Hampton

February 6, 1989

*Casassa & Ryan*, of Hampton (*Peter J. Saari* on the brief and orally), for the plaintiff.

*Sanders and McDermott P.A.*, of Hampton (*Lawrence M. Edelman* on the brief and orally), for the defendant.

BATCHELDER, J. This case once again demonstrates the fundamental tension in our State between the forces of development and a town's effort to protect ecologically sensitive areas. The plaintiff, Donna Rowe, appeals a Superior Court (*Groff*, J.) order which upheld the North Hampton Zoning Board of Adjustment's denial of her application for a variance from the town's wetlands ordinance to permit construction of a house and septic system. The plaintiff raises three primary issues on appeal: (1) that the board's denial of the variance was unreasonable or unlawful; (2) that the plaintiff's lot is exempt from the wetlands ordinance because of grandfathering provisions; and (3) that if a variance is not granted, the board's action constitutes a regulatory taking in violation of the State Constitution. For the reasons that follow, we affirm the trial court's order.

The plaintiff owns a 2.12-acre parcel of undeveloped land in North Hampton. She and her then husband purchased the property in 1968. In 1978, upon their divorce, the plaintiff became the sole owner of the land when she purchased her husband's one-half interest for $2000. The plaintiff's lot is located in an area designated as an R-2 Medium Density District on the town's zoning map. Among the uses permitted in this district is included the construction of single-family homes. The size of the plaintiff's lot satisfies the district's minimum square footage requirement of two acres. Overlayed upon the R-2 District, however, are wetland conservation areas. The plaintiff's property is located in an area designated as an inland wetland conservation area on the town's wetlands map. Section 409 of the town's ordinance governs wetland conservation areas. Enacted in 1979, the wetlands ordinance lists seven permitted uses in inland wetland areas, none of which includes the construction of a single-family dwelling. *See* NORTH HAMPTON, N.H., ZONING ORDINANCE, art. 4, § 409.3(b).

To determine whether an inland wetland exists on a piece of property, a soil analysis may be made. ORDINANCE, § 409.1(c). The ordinance defines inland wetlands as any land submerged under fresh water, including areas subject to permanent or periodic flooding, and any abutting soils designated as poorly drained or very poorly drained soils. *Id.*, § 302.31. Poorly drained soils are those "in which water is removed so slowly that the soil remains wet for a large part of the time." *Id.*, § 302.32. Very poorly drained soils are those "in which water is removed from the soil so slowly that the water table remains at or on the ground surface most of the year." *Id.*, § 302.33.

Two other sections of the wetlands section of the ordinance are especially pertinent here. Section 410 provides that "[n]o [s]eptic [s]ystem or leaching field may be located closer than 75 feet from any wetland." In addition, section 411 states that "[w]etlands . . . may be used to satisfy minimum lot area and setback requirements provided that that portion which is wetland does not exceed fifty (50) percent of the minimum required lot area" and that the remaining area can accommodate adequately all required utilities. Thus, if the plaintiff's lot contains greater than one acre of wetland, she cannot obtain the benefits of section 411.

In August, 1985, the plaintiff applied to the North Hampton Zoning Board of Adjustment for a variance from section 409.3(b) (list of permitted uses in inland wetlands) and section 410 (requirement that septic systems be set back 75 feet from wetlands) of the North Hampton Zoning Ordinance so that a prospective purchaser could place fill on the property and construct a $450,000 home. In that same month, the plaintiff obtained approval from the New Hampshire Water Supply and Pollution Control Commission for the installation of a septic system on her lot.

To obtain a variance under RSA 674:33, I(b), an applicant must satisfy each of five requirements: (1) that a denial of the variance would result in unnecessary hardship to the applicant; (2) that no diminution in value of surrounding properties would occur; (3) that the proposed use would not be contrary to the spirit of the ordinance; (4) that granting the variance would benefit the public interest; and (5) that granting the variance would do substantial justice. *Biggs v. Town of Sandwich*, 124 N.H. 421, 427, 470 A.2d 928, 932 (1984); *Gelinas v. Portsmouth*, 97 N.H. 248, 250, 85 A.2d 896, 898 (1952).

In September, 1985, the zoning board held a public hearing on the plaintiff's application, at which the board members considered evidence. This evidence consisted of the town's wetland map, a letter from a soil scientist who had examined the property stating that most of the lot was wetland and not suitable for development, the testimony of abutters concerning a stream and flooding on the lot, and a view of the lot by board members. The plaintiff does not dispute the defendant's assertion that, although represented by counsel, she presented no contrary evidence at the hearing. Finding that the plaintiff had satisfied none of the requirements for a variance, the board denied her application.

428

■ The plaintiff thereafter asked the board to reconsider its decision, which it refused to do because no new evidence had been presented and no technical error had been indicated in her reconsideration motion. The plaintiff then appealed the variance denial to the superior court. At trial, the court reviewed the evidence presented to the board and also heard additional testimony, *see* RSA 677:13, including that of two soil scientists and one wetlands scientist. A statutory presumption exists that a zoning board's findings are *prima facie* lawful and reasonable, and they may be set aside only when a court is "persuaded by the balance of probabilities, on the evidence before it, that said order or decision is unreasonable." RSA 677:6. The trial judge specifically found that over fifty percent of the lot consisted of wetland, even though part of the lot consisted of somewhat poorly drained soil, a soil type which would not qualify as wetland under the town's zoning ordinance. Based on the evidence presented before him, the judge concluded that the zoning board's determination that the plaintiff had not satisfied any of the criteria for obtaining a variance was neither unlawful nor unreasonable. The trial court also decided that the denial of the variance was not an unconstitutional taking.

■ The plaintiff first challenges the trial court's findings that the zoning board's variance denial was not unlawful or unreasonable. The plaintiff contends that an unnecessary hardship will result if a variance is not granted. An unnecessary hardship "exists when an ordinance unduly restricts the use to which land may be put," *Governor's Island Club v. Town of Gilford*, 124 N.H. 126, 130, 467 A.2d 246, 248 (1983), and when the deprivation resulting from the application of the ordinance effectively prevents the owner from making any reasonable use of the property, *id.* A hardship, however, only arises from "a special condition of the land which distinguishes it from other land in the same area with respect to the suitability for the use for which it is zoned." *Margate Motel, Inc. v. Town of Gilford*, 130 N.H. 91, 94, 534 A.2d 717, 719 (1987). The uniqueness of the land, not the plight of the owner, determines whether a hardship exists. *Id.*; *Carbonneau v. Town of Exeter*, 119 N.H. 259, 262, 401 A.2d 675, 677 (1979).

■■ Our standard of review of the trial court's decision is whether the evidence reasonably supports the trial court findings, not whether we would find as the trial court did. *Durant v. Town of Dunbarton*, 121 N.H. 352, 357, 430 A.2d 140, 144 (1981). The trial court held that the plaintiff established nothing unique about her property which distinguished it "from any other two-acre parcel,

more than 50 percent of which constitutes wetland." The plaintiff contends not only that the court applied the wrong criterion to her case, but also that the distinguishing characteristic of her parcel is that the non-wetland portion is nearly of a size to satisfy the wetlands ordinance. Assuming, for the sake of argument, that the trial court did apply the wrong standard, the alleged unique characteristic of plaintiff's parcel still is insufficient to satisfy the hardship test. "The size and dimensions of a parcel do not create an unnecessary hardship when the land could still be used for the purposes permitted by the zoning ordinance," *Margate Motel*, 130 N.H. at 94, 534 A.2d at 719, as the plaintiff's parcel still can be.

The plaintiff further contends, however, that the permitted uses available to her are unreasonable. The plaintiff points out, and the trial court found, that two of the uses, agriculture and forestry, are not environmentally practical uses for her lot. The plaintiff argues that not only would these uses contravene the purposes of the wetlands ordinance, but also that the soil on her lot is poorly suited to producing crops and to tree farming. Finally, the plaintiff complains that these uses would not be economically viable, noting that tree farming would net her about ten dollars per year.

■ These arguments are of no avail to the plaintiff. Whether or not agriculture and forestry are environmentally sound uses of her lot is irrelevant because, under the ordinance, they are permitted uses. The ostensible inconsistency in permitting uses in wetlands which may undermine the ordinance's purpose of preventing their destruction is not a basis for determining that a hardship exists, but rather may be a deficiency in the ordinance. In addition, nowhere does the plaintiff argue that the natural characteristics of her property distinguish it from the other land in the same area which is similarly zoned. *See Margate Motel*, 130 N.H. at 94, 534 A.2d at 719. The only unique characteristic the plaintiff alleges is that her lot almost satisfies the zoning ordinance. Finally, her argument that the uses available to her are not economically viable is not determinative in deciding whether a hardship exists. The uniqueness of the land, not the financial circumstances of the owner, determines whether a hardship exists. *Id.; Carbonneau*, 119 N.H. at 262, 401 A.2d at 677.

■ Based on the record before the trial court, we believe that the evidence reasonably supports the trial court's finding that the plaintiff failed to demonstrate a hardship with respect to her land. *See Durant v. Town of Dunbarton*, 121 N.H. at 357, 430 A.2d at 144. Because we uphold the finding that the plaintiff did not

establish unnecessary hardship, we need not address in detail the plaintiff's arguments concerning the other four requirements for granting a variance. We note, however, as the defendant points out, that the record in this case failed to establish that the plaintiff provided sufficient evidence to show that the development of this wetland would preserve the value of surrounding properties, do substantial justice, benefit the public interest, and not be contrary to the spirit of an ordinance enacted to protect a valuable resource. *See Governor's Island Club*, 124 N.H. at 129, 467 A.2d at 247.

 The second issue the plaintiff raises on appeal is that her lot is exempt from the operation of the wetlands ordinance. In support of her contention, she argues that section 406.2 of the town zoning ordinance exempts from the operation of the ordinance lots of record existing at the time the ordinance was enacted. This argument is devoid of merit, as the defendant correctly points out. Section 406.2 exempts lots of record from the yard and lot size requirements in the various municipal zones, requirements which the plaintiff's lot satisfies. The section does not exempt her lot from the use provisions of the wetlands or any other section of the ordinance.

Finally, the plaintiff contends that the denial of a variance will effect a taking of her land under the New Hampshire Constitution, part I, article 12. She complains that the town's wetlands restrictions are arbitrary and unreasonable, and that they substantially deprive her of an economical use for her land. The plaintiff argues that the town acted unreasonably in failing to examine the value of the wetland in question, instead of merely determining that a lot contained wetland and then forbidding development on it. The plaintiff distinguishes her situation from our prior wetlands cases on the grounds that those cases, unlike hers, involved ecologically valuable wetlands. Finally, the plaintiff argues that the town's restrictions on her lot reduce its value from $130,000 to a small fraction of that amount, thereby unconstitutionally destroying the value of her property.

 We reject the plaintiff's contentions. Beginning with *Sibson v. State*, 115 N.H. 124, 336 A.2d 239 (1975), this court has on several occasions upheld the constitutionality of a denial of permission to fill in property containing wetlands. *See State Wetlands Bd. v. Marshall*, 127 N.H. 240, 500 A.2d 685 (1985); *Claridge v. N.H. Wetlands Bd.*, 125 N.H. 745, 485 A.2d 287 (1984); *Biggs v. Town of Sandwich*, 124 N.H. 421, 470 A.2d 928 (1984). The rationale underlying those decisions was that no taking occurs where the

"public policy advanced by a regulation is particularly important and the landowner's action would substantially 'change the essential natural character of [the] land so as to use it for a purpose for which it was unsuited in its natural state and which injures the rights of others.' " *Claridge*, 125 N.H. at 750, 485 A.2d at 290 (quoting *Sibson*, 115 N.H. at 129–30, 336 A.2d at 243, itself quoting *Just v. Marinette County*, 56 Wis. 2d 7, 201 N.W.2d 761, 768 (1972)). In wetlands and other cases where the proposed use of property is deemed injurious to the public, the test to determine whether a taking has occurred is whether the property owner has made a showing that the regulation thwarts her substantial, justified expectations concerning the property and whether the burden the government action casts upon the property owner is unreasonably onerous. *Claridge*, 125 N.H. at 750, 485 A.2d at 290–91.

In rejecting the plaintiff's taking argument, the trial court relied on many of the factors which the *Claridge* court deemed dispositive of the issue. In *Claridge*, the plaintiffs had been denied a permit to fill in their lot, which bordered a tidal creek and consisted of saltmarsh vegetation and woods. 125 N.H. at 747, 485 A.2d at 288. Like the plaintiff in this case, the Claridges had arranged to sell their property contingent upon the buyer obtaining the necessary regulatory approvals to build a house on the property. *Id.* In rejecting their arguments on appeal, this court considered the potential harm to the wetland to be caused by the proposed development, whether the board's decision promoted the State's strong public policy of protecting wetlands, whether the plaintiffs had constructive and actual notice of statutory impediments to development, whether others owning wetlands would be similarly burdened, and whether the burden imposed was different in kind or result from the risk the plaintiffs took in purchasing the property with notice of regulatory hurdles and in waiting to develop the property while concerns about diminishing wetlands resources increased. *Id.* at 752–53, 485 A.2d at 292.

In this case, the trial court found that the board's decision clearly promoted the town's and State's legitimate policy of protecting wetlands. The court ruled that the proposed construction of the house and septic system would adversely affect the wetland, as the plaintiff failed to provide any evidence that her plans for the lot would not harm the wetland. Based on testimony by the plaintiff, the court also decided that she had no "*substantial* or *justified* expectation as to the property when it was purchased" (emphasis in original), because significant legislation indicating a strong public policy of protecting wetlands had been enacted at the time.

Finally, the court determined that, although none of the allowable uses in the inland wetland conservation area is of any substantial monetary value to the plaintiff and that the market value of the lot as a buildable lot (assuming placement of fill) was about $130,000 in 1987, the lot would have economic value even without the variance. The plaintiff's own expert witness testified that the property would still have market value even if construction were not allowed, although the expert did not say how much value the property would have in that situation. For these reasons, the trial court concluded that North Hampton's wetlands ordinance was not unreasonable and that the burden upon the plaintiff, although substantial, was not especially onerous.

We find no error in the trial court's decision that no taking has occurred in this case. We hold that the wetlands ordinance is neither unreasonable by itself nor unreasonable as applied to the plaintiff's land. The plaintiff's argument that the town's regulations are arbitrary, because they allegedly do not distinguish those wetlands which have great ecological value from those that do not, is without merit. Like the defendant in *State Wetlands Bd. v. Marshall*, who challenged the definition of wetlands under RSA 483-A:1-a, the plaintiff's real complaint is that the town's definition of wetlands should be changed. We see nothing unreasonable or arbitrary about the town's use of the terms "poorly drained" and "very poorly drained" soils to determine what constitutes wetland, *see Marshall*, 127 N.H. at 251, 500 A.2d at 692, nor does the plaintiff offer any authority for her proposition that the ordinance, in order to be constitutional, must grade wetlands according to their ecological value. Any changes in the definitions contained within the town's ordinance should be sought through proper local channels, not in this court. *Id.*

Equally unavailing is the plaintiff's argument that the ordinance is unreasonable as applied to her because it substantially reduces the value of her property. The trial court correctly found that the variance denial did not prevent the plaintiff from maintaining current uses of the property, but rather prevented a major change in the wetland for speculative profit. The value of her lot remained the same after the variance denial as before. *See Marshall*, 127 N.H. at 249, 500 A.2d at 690. As in both *Claridge* and *Marshall*, the plaintiff here had at least constructive notice of legal impediments to her right to build upon her wetland lot. "The State cannot be guarantor, via inverse and condemnation proceedings, of the investment risks which people choose to take in the face

of statutory or regulatory impediments." *Claridge*, 125 N.H. at 751, 485 A.2d at 291. Finally, even though the value of plaintiff's land is not as great without the variance as with it, a comparison of values before and after is relevant, but not conclusive evidence of a taking. *Sibson*, 115 N.H. at 127, 336 A.2d at 241.

*Affirmed.*

All concurred.