[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before the Court is an appeal by John Strafach ("Plaintiff") who seeks judicial review of a final order of the Department of Environmental Management ("DEM") regarding DEM's denial of a request for variances. Jurisdiction is pursuant to R.I.G.L. 1956 (1987 Reenactment) § 42-35-15.
FACTS AND TRAVEL
Plaintiff is the owner of certain real property located south of Atlantic Avenue in the Town of Westerly, Rhode Island, and designated as lots 279, 280 and 281. The property consists of two portions, a southerly portion which is adjacent to the ocean and a northerly portion which is adjacent to Winnapaug Pond. On October 30, 1989, plaintiff submitted an application (#8936-187) to DEM seeking permission to build an Individual Sewage Disposal System ("I.S.D.S."). Plaintiff sought variances to construct an I.S.D.S., an in-ground swimming pool, and a wooden deck. The I.S.D.S. was to be located 115' from the spring moon tide in a location designated as an erosion prone area by the Coastal Resources Management Council ("CRMC"). Plaintiff proposed to limit the use to the ocean-side of the property.
On January 30, 1990, plaintiff filed a request for three variances from DEM's regulations concerning location of an I.S.D.S. See S.D. — Rules and Regulations Establishing MinimumStandards Relating to the Location. Design, Construction andMaintenance of Individual Sewage Disposal Systems (1980, as amended) (hereinafter "Minimum Standards"). Specifically, plaintiff requested a variance from S.D. 3.05(7)(e) which requires a 150' setback for an I.S.D.S. Additionally, variances for the wood decking and pool were requested, but no regulations were referenced. In support of his request, plaintiff noted that the proposed I.S.D.S. would discharge sixty-one percent less effluent than the existing units, which are ten to thirty years old and which are not in conformance with present regulations.
On April 16, 1990, DEM's Division of Groundwater and Freshwater Wetlands denied the variance requests. The board cited the system's high probability of failure and its potential effect on public interest and health in denying the variances. On May 15, 1990, plaintiff appealed the denial of the variance to DEM's Administrative Adjudication Division. The matter was heard before a DEM hearing officer on February 28, 1991 and March 13, 1991.
On September 9, 1991, the hearing officer issued a final order denying plaintiff's appeal. The hearing officer concluded that plaintiff had been unable to sustain his burden of proof that the variance would not be contrary to public interest and health. More specifically, she found that the placement of the pool could interfere with the function of the I.S.D.S. Additionally, she found that the wood pilings could cause sewage discharge and that the I.S.D.S. could be damaged by erosion. Finally, the hearing officer noted that because the plaintiff had failed to meet his burden it was unnecessary to reach a decision on the issue of hardship.
Plaintiff challenges DEM's denial of the variances on several grounds. Initially, plaintiff disputes DEM's interpretation of the standard required to show "unnecessary hardship." Additionally, plaintiff contends that the dual standard applied on appeal from a denial of a variance is unconstitutional. Finally, plaintiff argues that DEM's findings are not supported by substantial evidence, are affected by error of law, are arbitrary, and are clearly erroneous. This Court will treat the denial of plaintiff's requests for variances for the pool, the wood deck, and the I.S.D.S., in seriatum.
The Administrative Procedures Act provides that this Court must review the hearing officer's decision in accordance with the standards set forth in § 42-35-15 which provides in pertinent part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Section 42-35-15 precludes a reviewing court from substituting its judgment for that of the agency concerning questions of fact.Guarino v. Dept. of Soc. Welfare, 410 A.2d 425, 428 (1980). A reviewing court must uphold an agency decision if there is any legally competent evidence in the record to support the agency decision. Blue Cross Blue Shield v. Caldarone, 520 A.2d 969, 972 (1987). This standard, however, does not preclude judicial review of questions of law and their application to the facts.Turner v. Dept. of Emp. Sec. Bd. of Rev., 479 A.2d 740, 842 (1984).
Both parties dispute the meaning to be applied to the term "unnecessary hardship" as found in the appeal procedure of the regulations. Plaintiff contends that the "more than a mere inconvenience" standard should be applied while DEM asserts that a "deprivation of all beneficial use" is necessary.
Pursuant to SD 20.01(b) of the DEM regulations, an applicant is entitled to a variance where literal enforcement of the provision will result in unnecessary hardship. However, the regulations are otherwise silent as to what constitutes such a standard. Both plaintiff and defendant agree that an analogy to that standard as it applies in the zoning concept is dispositive. However, plaintiff asserts that the less stringent "more than a mere inconvenience" standard should be applied while defendant asserts that the "denial of all beneficial use" standard is applicable. The Court is mindful that the unnecessary hardship standard has not yet been interpreted in the context of a DEM variance. However, for the reasons that follow, the Court finds it appropriate to utilize the standard as espoused by our Supreme Court in various zoning cases.
In the zoning context, where a landowner seeks to use the land for a purpose not ordinarily permitted, a variance must be obtained. To be entitled to the variance under these circumstances the landowner must satisfy the "unnecessary hardship" standard as enunciated in G.L. 1956 (1980 Reenactment)45-24-19(c). This term has been interpreted to mean that the landowner must prove that denial of the variance would result in a deprivation of all beneficial use of the property. Rozes v.Smith, 120 R.I. 515, 519, 388 A.2d 816, 819 (1978).
In contrast, where a landowner seeks a variance for a use which is otherwise permitted pursuant to the relevant regulations he need not satisfy such a strict standard; rather, he need only show that denial of the variance would "create an adverse impact amounting to something more than a mere inconvenience." Viti v.Zoning Board of Review of Providence, 92 R.I. 59, 166 A.2d 211
(1960). In this instance, the landowner is seeking relaxation of certain regulations governing a permitted use. An example of such a deviation is where a landowner seeks to be relieved of area or setback requirements. Gara Realty, Inc. v. Zoning Bd. of Reviewof the Town of South Kingstown, 523 A.2d 855, 858 (R.I. 1987);DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 246, 405 A.2d 1167, 1170 (1979).
In the instant case, the DEM regulations specifically authorize the construction of an I.S.D.S. Accordingly, the Court shall apply the standard of unnecessary hardship as it pertains to a deviation. Plaintiff's burden, therefore, was to demonstrate that denial of the variance would create an adverse impact amounting to something more than a mere inconvenience. Viti,supra. In Gara, supra, our Supreme Court reviewed certain town zoning regulations pertaining to the protection of the public health and interest from the adverse effects of the secretion of sewage. Gara, at 858. The Gara Court held that the plaintiff only needed to demonstrate that "enforcement would amount to something more than a mere inconvenience." Id. As inGara, the instant case involves DEM regulations which are designed to protect public health and interest. Accordingly, the Court is satisfied that plaintiff's burden in the case at bar is to prove he has suffered from more than a mere inconvenience by being denied the variances.
The Court's position is further supported by decisions in other jurisdictions requiring variances to be reserved for unusual and exceptional circumstances. Kelly v. Zoning Board ofAppeals of the Town of Hamden, 575 A.2d 249, 252 (Conn. App. 1990); Rowe v. Town of North Hampton, 553 A.2d 1331, 1334 (N.D. 1989).
This case is unique in two respects. First, it involves a landowner who is seeking a variance from certain DEM regulations which would allow him to construct a new I.S.D.S. This new system would be designed to handle more effluent than the current system, which in turn, would cause less discharge into the surrounding area — a result in line with many of DEM's policies. Second, the regulation in question requires plaintiff to construct the proposed I.S.D.S. with a 150' setback, while an adjoining property owner, because of a line boundary, need only provide a 50' setback for the same type of I.S.D.S. This anomalous circumstance could theoretically result in plaintiff's neighbor being granted a variance for the same type of relief which DEM denied in the instant case. Consequently, this Court holds that this is indeed a unique and exceptional situation deserving of relief.
With respect to the requested variance for the pool, plaintiff argues that the hearing officer erred in not allowing testimony as to plaintiff's proposal to move the pool to comply with the regulations. Rule 17(a) of the Rules of Practice and Procedure for the Administrative Adjudication Division for Environmental Matters provides that anytime prior to rendering a decision the parties may attempt to settle. According to the rule, it is the duty of the hearing officer to stay the hearing to allow negotiations. Rule 17(a). The hearing officer found that the plaintiff agreed to move the pool but the hearing officer did not grant a stay to allow negotiations. As a result, the findings concerning the pool were made upon unlawful procedure. Substantial rights of the plaintiff have been prejudiced by this error since the plaintiff has been forced to litigate an issue which could have been settled earlier in the proceedings. By moving the pool to an area 15 feet from the I.S.D.S., as he had proposed at the hearing, plaintiff would have been in compliance with regulation S.D. 3.05(c).
Plaintiff next contends that DEM's denial of the variance for the wood deck was erroneous. Plaintiff argues that because the DEM regulations do not specifically prohibit such a structure the denial was characterized by an abuse of discretion. While DEM agrees that no specific regulation existed to deny plaintiff the variance, they assert that the placement of wood pilings, which would be used to support the deck, could cause sewage to escape. Under this theory, DEM argues, denial of the variance was proper pursuant to SD 2.08.
Pursuant to said section, no person is allowed to cause or otherwise allow sewage to be discharged on or near the surface of the ground without express permission of the DEM director. DEM contends that the possibility that the wood pilings could cause such a discharge authorized them to deny plaintiff's variance. The Court disagrees.
In enacting SD 2.08, DEM did not specifically prohibit the discharge of all sewage; rather, they conditioned such a prohibition upon the applicant not having first received the director's permission. This conditional discharge manifests DEM's intent to allow certain forms of sewage to be discharged. It would seem inconceivable, then, for DEM to argue that the mere possibility that some sewage could escape, as a result of the wood pilings, is in contravention of the specific purpose and intent of enacting the regulations.
Moreover, the Court is further persuaded by the fact that no regulation exists addressing the issue as to whether or not such a structure is prohibited. DEM's attempt to place a wood deck within the ambit of SD 2.08, which was promulgated in order to lessen sewage released from an I.S.D.S., is error. Since plaintiff's request to construct a wood deck does not directly conflict with any DEM regulation, the denial of the variance was characterized by an abuse of discretion and must be reversed.
Plaintiff next contends that the hearing officer should have reversed the board's decision denying him the I.S.D.S. variance. Plaintiff bases his contention on the law of nonconforming uses as borrowed from zoning law. A nonconforming use is one "which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after . . . although it does not comply with the zoning restrictions." Anderson, American Law of Zoning3d. § 6.01 (P. 446) (1986 Lawyers Coop). Under zoning law, modernization of a nonconforming use is generally permissible.Gagne v. Lewiston Brushed Stone Co., Inc., 367 A.2d 613, 623 (Me. 1976).
Plaintiff proposes that his substitution of a nonconforming system with a modern state of the art system is a modernization. Further, plaintiff asserts that since DEM regulations do not provide for improvements as distinct from an initial installation of a system in an area, this is an appropriate situation to apply zoning law by analogy.
In reviewing the whole record and finding that the pool and the wood deck do not conflict with any regulations, and additionally that the regulations fail to cover adequately the replacement of a nonconforming use, this Court concludes that the hearing officer's decision denying the I.S.D.S. variance is clearly erroneous. It is the policy of DEM to protect the natural resources of the State. R.I.G.L. 1956 (1988 Reenactment) §42-17.1-2. While DEM has broad powers to carry out its policies, these powers cannot be construed so broadly as to result in absurdities. See City of Warwick v. Aptt., 497 A.2d 721, 724 (1985). To advocate the use of a nonconforming thirty year old system in the place of a modern system with sixty-one percent less sewage discharge seems to defeat DEM's purpose rather than further it. The hearing officer's findings that the new system will adequately treat sewage and will have no adverse impact on Winnapaug Pond dictate a reversal of the denial of variances. Winnapaug Pond, a particular source of concern for the Coastal Resource Management Council would appear to benefit most from the proposed system. In reversing this agency decision, the Court is ever mindful of the general policy concerns of the DEM as well as the CRMC which are actually being furthered by such a reversal.
After review of the entire record, the Court finds that plaintiff has experienced more than a mere inconvenience in being denied the variance. The Court further finds that the agency's denial of the variances was not supported by reliable and substantial evidence of the whole record. Accordingly, for the reasons hereinabove set out, the September 9, 1991 decision of the Department of Environmental Management is hereby reversed.
Counsel shall prepare an appropriate judgment for entry.