Grafton
No. 91-398

GREY ROCKS LAND TRUST & a.

v.

TOWN OF HEBRON & a.

October 14, 1992

*Baldwin & deSeve*, of Concord (*Carolyn W. Baldwin* on the brief and orally), for the plaintiffs.

*Brian W. Ray*, of Ashland, by brief and orally, for the defendant, William Robertie d/b/a Newfound Lake Marina, Inc.

*Deachman & Cowie P.A.*, of Plymouth, for the defendant, Town of Hebron, filed no brief.

JOHNSON J. The plaintiffs, Grey Rocks Land Trust (Grey Rocks), and its trustees, P. Andrews McLane and Douglas McLane, appeal the Superior Court's (*Smith,* J.) order upholding the decision of the defendant, Town of Hebron Zoning Board of Adjustment (ZBA), to grant a variance to co-defendant, William Robertie, doing business as the Newfound Lake Marina, Inc. (Marina). Because Robertie failed to sustain his burden of proving that he would suffer a hardship if the variance were denied, we reverse.

The Marina is a pre-existing, nonconforming use located in the Lake District established by the Hebron Zoning Ordinance, near the mouth of the Cockermouth River, which flows into Newfound Lake. The purposes of the Lake District are "to limit the uses of this district so as to protect [scenic, recreational and environmental] values and encourage only such further developments as will not harm the environment or destroy this district or any part thereof as a natural and scenic resource of the Town." HEBRON ZONING ORDINANCE, Art. VI, A. Permitted uses in the Lake District include small hotels and motels, restaurants, small office buildings and up to four-unit multiple-family dwellings. *Id.* Art. VI, B. The Marina pre-existed the enactment of the ordinance and is, therefore, permitted as a nonconforming use.

Grey Rocks is a land trust that owns property abutting the Marina. The trustees and beneficiaries use the trust property for recreational and residential purposes.

The Marina's facilities are located on a tract of roughly 35 acres on both sides of a channel, most of which is wetlands and/or flood plain. At the time of Robertie's application for a variance, the Marina's facilities consisted of five buildings: three buildings used for boat storage, one building used as a boat repair shop, and one building used for retail sales and rentals. These buildings are clustered close to the town road that services the Marina, away from the channel, and buffered from Grey Rocks' property. The Marina also includes docks and "bank slips" in the channel near the mouth of the river sufficient to accommodate at least 111 boats.

In October 1987, Robertie applied to the Hebron Board of Selectmen for a permit to build an additional boat storage building. The selectmen denied the application because it was an expansion of a nonconforming commercial use under the zoning ordinance.

In August 1988, Robertie applied to the ZBA for a variance to build the boat storage building. On September 14, 1988, the ZBA held a hearing to consider the application, which trustee Douglas McLane attended on behalf of Grey Rocks. The minutes from that

meeting reflect that trustee McLane "thinks this doesn't meet the requirements of Zoning[,]" but that "[h]e realizes it takes many boats for a business." At the conclusion of the hearing, the ZBA voted unanimously to grant the variance, and on October 5, 1988, the ZBA voted to deny Grey Rocks' appeal for a rehearing.

Grey Rocks appealed to the superior court pursuant to RSA 677:4. The Court (*Smith*, J.) remanded to the ZBA "for further hearing, if necessary, to make specific factual findings on the required grounds for a variance."

The ZBA held a public meeting on December 27, 1990, but voted against holding further hearings. The ZBA remitted a set of factual findings to the court, in which it essentially reaffirmed its previous findings. The court then dismissed the plaintiffs' appeal, ruling that "[t]he Board's decision amounted to an implicit finding that the several requisites for a variance had been met."

On appeal, the plaintiffs argue that the trial court erred in ruling that the ZBA's decision was reasonable and legally correct, because the ZBA made no factual findings relating to hardship, and no supporting facts appear in the record. We agree.

■ The superior court correctly set out the requirements for a variance:

> "To obtain a variance under RSA 674:33[,] I(b), an applicant must satisfy each of five requirements: (1) that a denial of the variance would result in unnecessary hardship to the applicant; (2) that no diminution in value of surrounding properties would occur; (3) that the proposed use would not be contrary to the spirit of the ordinance; (4) that granting the variance would benefit the public interest; and (5) that granting the variance would do substantial justice."

*Rowe v. Town of North Hampton*, 131 N.H. 424, 427, 553 A.2d 1331, 1333 (1989); *Gelinas v. Portsmouth*, 97 N.H. 248, 250, 85 A.2d 896, 898 (1952).

■ This court has further defined the requirement that a denial of a variance result in unnecessary hardship. The standard for establishing hardship is narrow. *Governor's Island Club v. Town of Gilford*, 124 N.H. 126, 130, 467 A.2d 246, 248 (1983). "For hardship to exist under our test, the deprivation resulting from application of the ordinance must be so great as to effectively prevent the owner from making *any* reasonable use of the land." *Id.* (emphasis added). Furthermore, the hardship must arise from "some unique condition *of*

*the parcel of land* distinguishing it from others in the area . . . ."
*Crossley v. Town of Pelham*, 133 N.H. 215, 216, 578 A.2d 319, 320
(1990) (emphasis added). "The uniqueness of the land, not the plight
of the owner, determines whether a hardship exists." *Rowe, supra* at
428, 553 A.2d at 1334.

■ In this case, the plaintiffs have met their burden of proving
that the ZBA's decision was "erroneous as a matter of law or unrea-
sonable on a 'balance of probabilities.'" *Crossley, supra* at 216, 578
A.2d at 320 (quoting RSA 677:6). Defendant Robertie demonstrates
a misunderstanding of the relevant law when he states in his brief
that "[Grey Rocks] is substantially to blame for the inadequacy of
the local record, because their representative failed to introduce suf-
ficient evidence to indicate the lack of the elements for a variance
. . . ." This is directly contrary to the law. The party seeking a
variance, in this case Robertie, bears the burden of establishing each
of the requirements for a variance. *Rowe, supra* at 427, 553 A.2d at
1333.

■ Although "the failure to disclose specific findings is not error
where . . . no request for such findings is made," *Barrington East
Owners' Assoc. v. Town of Barrington*, 121 N.H. 627, 630, 433 A.2d
1266, 1268 (1981), "[t]here must, however, be sufficient evidence be-
fore the board to support a favorable finding on each of the statutory
requirements for a special exception," *id.* We have examined the
minutes of the four ZBA meetings at which the Marina variance was
discussed, including the December 27, 1990, meeting at which the
ZBA responded to the superior court's request for specific factual
findings. The only reference to a unique hardship is the conclusory
statement in the minutes of the October 5, 1988 meeting that "[t]he
Bd. feels a hardship does exist unique to this property which distin-
guishes it from all others similarly situated." The minutes fail to re-
veal the facts upon which this legal conclusion is based.

In order for the ZBA to have concluded that a hardship exists, it
would have to have found that literal enforcement of the ordinance
bars *any* reasonable use of the land. *Crossley, supra* at 216, 578 A.2d
at 320. Thus, a showing that Robertie was making a reasonable use
of the land at the time of the application for a variance would pre-
clude a finding of hardship.

■ The uncontroverted fact that the Marina had been operating
as a viable commercial entity for several years prior to the variance
application is conclusive evidence that a hardship does not exist. The

defendant Robertie was clearly making a reasonable use of his property prior to his application for a variance. A viable, nonconforming business fails to meet the strict standard for a finding of hardship established by cases such as *Governor's Island supra.*

■■ In addition to failing to find that denying the variance would preclude any reasonable use of Robertie's property, the ZBA also failed to find that Robertie's land was unique. The ZBA stated in its submission of fact findings to the court that "[t]he Newfound Lake Marina is the only Marina located within the Town of Hebron." A nonconforming use, however, may not form the basis for a finding of uniqueness to satisfy the hardship test. The nonconforming use that is presently located on Robertie's land has nothing to do with the land itself. Therefore, because the record fails to reflect any other basis for finding that Robertie's land is unique, we hold that the ZBA erred as a matter of law in finding that Robertie satisfied the uniqueness prong of the hardship requirement.

The defendants next argue that, independent of the hardship requirement, the owner of a nonconforming use has a right to "[develop the] nonconforming use in a way that results in a mere intensification of the use that reflects a natural expansion and growth of trade." *Town of Hampton v. Brust,* 122 N.H. 463, 469, 446 A.2d 458, 461 (1982). On the other hand, "enlargement or expansion may not be substantial . . . ." *New London Land Use Assoc. v. New London Zoning Board,* 130 N.H. 510, 516, 543 A.2d 1385, 1388 (1988).

> "[I]n order to determine how much a nonconforming use may be expanded or changed, we must look to the facts existing when the nonconforming use was created. We must also consider the extent to which the challenged use reflects the nature and purpose of the prevailing nonconforming use, whether the challenged use is merely a different manner of using the original nonconforming use or whether it constitutes a different use, and whether the challenged use will have a substantially different impact upon the neighborhood."

*Id.* at 517, 543 A.2d at 1388 (citations omitted).

We have never permitted an expansion of a nonconforming use that involved more than the internal expansion of a business within a pre-existing structure. *U-Haul Co. of N.H. & Vt., Inc. v. City of Concord,* 122 N.H. 910, 451 A.2d 1315 (1982) (construction of residential apartment within commercial building); *Brust supra* (expansion of arcade business by adding more machines within existing structure).

Moreover, the two examples we gave in *Brust* to illustrate the kind of expansion that is permissible both involved internal expansion within an existing building. *Brust, supra* at 469, 446 A.2d at 461 (law firm could increase number of lawyers or clients; restaurant could add more tables and chairs).

Furthermore, in *U-Haul* no abutters objected to U-Haul's renovation, and the court found that the proposed apartment "would have less of an impact on the area than a permissible [use]." *U-Haul, supra* at 912–13, 451 A.2d at 1317.

■ In the instant case, it is apparent from the aerial photographs, and the defendants concede in their brief, that the new building is located 450 feet closer to Grey Rocks than the five pre-existing buildings. Thus, the new building clearly has a greater aesthetic impact on the abutting property than the other five buildings. In this case, unlike in *U-Haul* and in *Brust*, we hold that the new building will have "a substantially different impact upon the neighborhood." *New London, supra* at 517, 543 A.2d at 1388.

■■ Any expansion of a nonconforming use must be evaluated in the context of the zone in which it is located. *Cf. Levesque v. Hudson,* 106 N.H. 470, 214 A.2d 553 (1965) (variance for construction of bank granted where district was already largely commercial), *overruled on other grounds by Winslow v. Holderness Planning Board,* 125 N.H. 262, 269, 480 A.2d 114, 117 (1984). The Lake District is intended to protect "scenic, recreational and environmental values" and to "encourage only such further development as will not harm the environment or destroy this district or any part thereof as a natural and scenic resource of the Town." We hold as a matter of law that the construction of a new building, such as the one proposed by the Marina, would substantially impair the natural scenic, recreational and environmental values of the surrounding property, contrary to the purposes of the Lake District, and is therefore beyond the scope of the "natural expansion," *Brust, supra* at 469, 446 A.2d at 461, to which the Marina is entitled.

■ The decision of the ZBA granting a variance to defendant Robertie is reversed.

*Reversed.*

HORTON, J., dissented; the others concurred.

HORTON, J., dissenting: I depart from the majority in two ways. First, I do not want to perpetuate the "hardship" path this court has

followed in recent times. Second, I agree with the trial court, given the presumption of correctness afforded by statute to the findings of the administrative body and the fact that the burden on appeal, in the trial court, is on the party seeking to set aside the administrative decision. This burden is to prove that the decision is unlawful or unreasonable.

In my opinion the majority sets forth, accurately and succinctly, the current position of hardship in our law of zoning variance. I would ask for a full reconsideration of our definition of hardship, in the appropriate case, and therefore do not adopt the majority statement and take the opportunity to outline my concerns.

This court has affirmed repeatedly the constitutional right "to be protected in the use and enjoyment of one's property." *Town of Chesterfield v. Brooks*, 126 N.H. 64, 68, 489 A.2d 600, 603 (1985); *see Burrows v. City of Keene*, 121 N.H. 590, 432 A.2d 15 (1981); *Metzger v. Town of Brentwood*, 117 N.H. 497, 374 A.2d 954 (1977). This right may be reasonably regulated by cities and towns under properly delegated police powers. *Metzger*, 117 N.H. at 502–03, 374 A.2d at 957–58. The zoning power is such a power. *Id.* at 503, 374 A.2d at 958. The determination of the reasonableness of a city's or town's regulation involves "a balancing of the injury or loss to the landowner against the gain to the public." *Id.* at 501, 374 A.2d at 957. Any analysis starts with the constitutional principle that a property owner may use his property in any reasonable way he sees fit and then looks to see if the regulation is appropriate.

The regulation may be improper in two ways, generally or uniquely. In the first case, since the regulation is of general application, it is challenged by a direct attack on the ordinance. *See Brooks supra; Burrows supra*. In the latter case, where the applicability of the regulation impacts only a specific site and is otherwise reasonable in general application, the appropriate relief is by variance. *Otto v. Steinhilber*, 282 N.Y. 71, 75, 24 N.E.2d 851, 852 (1939).

Thus, the variance, in the zoning scheme, permits general applicability of the ordinance in the face of unique unconstitutional impact. *Bouley v. Nashua*, 106 N.H. 79, 84, 205 A.2d 38, 41 (1964). It saves the otherwise valid zoning ordinance from death at the hands of property owners with site-specific constitutional claims. It is the safety valve of the zoning ordinance.

Crucial to the award of a variance to the complaining property owner is a finding of unnecessary hardship. Arguably, any regulatory interference with the property owner's right is a hardship. *Fortuna v. Zoning Board of Manchester*, 95 N.H. 211, 213–14, 60 A.2d 133,

135–36 (1948). This hardship may be necessary when it affords commensurate public advantage and is required in order to give full effect to the purpose of the ordinance. *St. Onge v. Concord,* 95 N.H. 306, 308, 63 A.2d 221, 223 (1949). One might say that if the desired use has no practical adverse effect on others and does not offend the zoning scheme, regulation forbidding the use creates an unnecessary hardship.

Being clearly mindful of the caution that "anyone who attempts to organize and set forth a clear picture of the American law on variances either (a) has not read the case law, or (b) has simply not understood it," 5 N. WILLIAMS & J. TAYLOR, AMERICAN LAND PLANNING LAW 12 (1985), I discern three approaches to the definition of unnecessary hardship. All three have received lip service in our cases. The first approach, which appears to be the present approach of this court, is the "substantial taking" approach. This favors the integrity of the ordinance and says the regulation stands unless it fails to provide any permitted use to the property owner. *See Governor's Island Club v. Town of Gilford,* 124 N.H. 126, 130, 467 A.2d 246, 248 (1983). It rejects any claim of right to use property as one sees fit, no matter how unobtrusive. The other two approaches start from a broader property right basis.

The second is the "arbitrary and capricious" approach. Starting from a basic acknowledgment of the right of use, it says " 'unnecessary hardship' is whether the zoning limitation, viewing the property in the setting of its environment, is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property." *Protomastro v. Board of Adjustment,* 3 N.J. 494, 501, 70 A.2d 873, 876 (1950); *see St. Onge, supra* at 308, 63 A.2d at 223.

The third is the "reasonable use" standard. If the proposed use is reasonable and the restriction legitimate but more burdensome than was intended, then the restriction may be modified so long as there is no impairment of the public purpose of the regulation. *Hodge v. Pollock,* 223 S.C. 342, 347–48, 75 S.E.2d 752, 754 (1953). *Hodge* cites *St. Onge* as its authority for this approach. *See Fortuna, supra* at 213–14, 60 A.2d at 135–36.

I am uncertain what approach constitutes the proper approach to unnecessary hardship, but I am convinced that we have gone too far in our requirements. We have made it essentially impossible for a zoning board of adjustment, honoring the letter of the law of this State, to afford the relief appropriate to avoid an unconstitutional application of an otherwise valid general regulation. We have stopped off the safety valve.

I would affirm the trial court. The ladder of review mandates that we not substitute our judgment for that of the zoning board, but give appropriate deference to each stopping point on the ladder. The zoning board of adjustment granted the requested variance on September 14, 1988, without specific findings of fact, but with the note that, "[a]fter lengthy discussions of the conditions, especially the hardship condition, the Board voted unanimous Aye." On October 5, 1988, it denied a motion for rehearing, unanimously, finding that "[t]he Bd. feels a hardship does exist unique to this property which distinguishes it from all others similarly situated." On December 27, 1990, after remand from the trial court for more findings, it reaffirmed its prior findings and added, "[t]he property is unique in the zone and the ordinance prevents the owner from effectively utilizing the property for other than its current use—that of a Marina."

Review of this decision by the trial court is governed by the provisions of RSA 677:6, which places the burden of proof on the party seeking to set aside the decision of the zoning board to show that the decision is unlawful or unreasonable. Further, the statutory provision requires deference to the administrative body by requiring the trial court to treat all findings of fact by that body as *prima facie* lawful and reasonable. The deference is not total, however, since *prima facie* is not conclusive, and the trial judge "has the power to overturn the board's determination when [it] is persuaded by a balance of probabilities, on the evidence before the court, that the order or decision is unjust or unreasonable." *Cook v. Town of Sanbornton*, 118 N.H. 668, 670, 392 A.2d 1201, 1202 (1978). In this case, the trial court stated that, "[u]pon a review of the pleadings and record in this case, . . . the Board committed no errors of law, and that on the balance of probabilities the Board's decision was not unjust or unreasonable . . . [;] the plaintiff did not demonstrate that the Board's decision granting the Marina a variance was erroneous as a matter of law or unreasonable on a balance of probabilities."

Our role on review is also limited, requiring deference to the trial court's findings, and, by extension, to the findings of the zoning board. "Our standard of review of the trial court decision is whether the evidence reasonably supports the trial court's findings, not whether we would find as the trial court did." *Rowe v. Town of North Hampton*, 131 N.H. 424, 428, 553 A.2d 1331, 1334 (1989). Does the status of the evidence in this case support the trial court's finding that the plaintiff failed to show the decision of the board to be unreasonable or unlawful?

The evidence in the case is essentially limited to the record before the zoning board of adjustment and the findings of the board. The plaintiff provided little evidence beyond the bare record of the administrative body. The majority opinion would have the plaintiff's burden satisfied by screening the administrative record and requiring it to contain solid, stated factual support for each element necessary to a variance. The conclusory factual findings are not enough. No deference is paid to the expertise of the local administrative body. *See Vannah v. Bedford*, 111 N.H. 105, 108, 276 A.2d 253, 255 (1971) (local board entitled to deference because of familiarity with circumstances and condition; in arriving at decision bases may include their members' knowledge). The majority opinion finds that the hardship finding at the zoning board level, and thus the finding of reasonableness and lawfulness at the trial court level, is not supported by the evidence. It says that no evidence exists for such support and that the evidence on the record shows a valid use existing on the property, and thus no hardship can be found as a matter of law.

I would defer to the zoning board of adjustment. In light of the specific findings of that board on the issue of hardship, I would look no further. The scant minutes of the board meetings can hardly reflect all of the evidence that was before the board. The administrative scheme for zoning envisions that some proceedings will take place without the formality of court proceedings, including hearings without substantial record. The members may develop much "evidence" from their familiarity with the site and its operation. Even if I did not accept the propriety of deference, I would find that the record transferred contains ample evidence to support the findings made by the board and the trial court. The uniqueness of the site and the absence of appropriate alternative permitted uses are amply demonstrated by a review of the pictures and maps submitted to the board.

Finally, I would not adopt the theory that because an existing use is present on any part of one's property, no variance is available for a similar, or another, use on the property. This may be appropriate when the subject property is small, or "used up," but it is not appropriate when there is a reasonably usable portion of that property. If a use is proposed for that portion that otherwise meets all the conditions for a variance, the variance should be granted and the use allowed. Otherwise, no nonconforming use could ever be expanded by variance. This would be an unfortunate situation crying for constitutional attack.